Wardell **JACKSON** et al., Appellants,

v.

A. S. **GENECOV** et al., Appellees.

No. 548.

Court of Civil Appeals of Texas, Tyler.

Sept. 2, 1971.

Rehearing Denied Oct. 7, 1971.

Shaw, Davis & Davey, Ken R. Davey, Dallas, for appellants.

Fred A. Lange, Houston, for Gulf Oil Corp.

Spruiell, Lowry, Potter, Lasater & Guinn, Chas. F. Potter, Tyler, for Cities Service Oil Co. and others; C. C. Cammack, R. James Leithead, George K. Gilbert, Tulsa, Okl., of counsel.

DUNAGAN, Chief Justice.

This is a title suit. This is an appeal from a judgment of the 114th District Court of Smith County, Texas, entered non obstante veredicto in part, upon jury findings in an action brought by appellees to try title in trespass. After trial by jury, both parties filed motions to disregard certain findings by the jury and for judgment n. o. v.; the court overruled defendants-appellants' motion but granted plaintiffs-appellees' motion. In granting appellees' motion for judgment, the court disregarded the jury's answer to special issues numbers 6, 7, 10 and 11. This lawsuit involves a tract referred to as Block 9, a part of a subdivision, Pick Moseley Estate. The estate was divided into 10 adjoining blocks containing 27.3 acres each as shown below.

**Figure 1**

[A4455]

By a deed of partition, dated March 6, 1905, part of Pick Moseley's estate, being the land in controversy, Block No. 9, was conveyed to Moseley's stepson, Fletcher Williamson, and another part, Block No. 8, also containing 27.3 acres, was conveyed to Lula Starr and her husband Chris Starr. The appellants are the heirs and ancestors of Lula and Chris Starr. On December 17, 1909, Fletcher Williamson, the common

source of title and who was a half brother of Lula Starr, conveyed his share (Block 9) to Chris Starr by a warranty deed reserving a vendor's lien to secure payment of three (3) notes executed by Chris Starr, which notes were from time to time extended. On October 25, 1919, Lula Starr died intestate, leaving surviving Chris Starr and nine (9) children. On July 22, 1921, Chris Starr conveyed to T. L. Tipton the land here involved in cancellation of the notes which he (Tipton) had acquired by regular assignments.

Tipton conveyed to Caldwell, Hughes, DeLay and Allen and they conveyed to Roosth & Genecov, the present claimants, appellees in the case. As another source of title, Caldwell, Hughes, DeLay and Allen had acquired the property at a tax sale against Tipton and Chris Starr, the validity of which was never attacked.

An oil and gas lease had been given by Caldwell, Hughes, DeLay and Allen to Gulf Oil Corporation which assigned said lease to Robert L. Wheelock, Jr., O. N. Beer and R. L. Wheelock, Sr. An oil well was drilled on Block 9 by Wheelock and Beer in March, 1953. Cities Service deraigns title under Wheelock and Beer to the oil and gas lease estate. Gulf retained an interest. (Gulf and Cities Service are defendants in the third party action. Their interest, however, is with plaintiffs-appellees, so a reference to appellees on this appeal will be taken to include Gulf and Cities Service who are also appellees).

The defendants-appellants are the heirs of Chris Starr and Lula Starr and claim only as such. They will hereinafter be referred to as the Starr heirs. They appeal as defendants and third party plaintiffs.

After the conveyance of Chris Starr to Tipton dated July 22, 1921, Chris Starr remained in possession of part of the land until he died in 1950. His home, however, was on the adjoining Block 8. Several of his heirs during the lifetime of Chris Starr built homes on lot 8, but none of their homes were located on Block 9, the land

involved in this controversy. The various houses used by Chris and Lula Starr and their heirs, although on Block 8, were near the east line of Block 9. There was no fence between the tracts. It seems that Chris Starr and heirs of Lula Starr or at least some of the heirs continued farming the land contained in lot 8. Several of the heirs said they used portions of Block 9. They said there was a water well, a garden and several patches of peanuts, peas, watermelons and potatoes; however, no one was able to give a description of the land so used in such way that it could be legally described. The witnesses did not know the location of the line between Blocks 8 and 9.

At no time was there a fence between the two blocks nor did defendants-appellants, or their predecessors from whom they claim title, at any time pay rent thereon and no one protested.

The oil well drilled by Wheelock and Beer on Block 9 has been operated and produced continuously. It always had a sign on it showing the ownership. It had the usual equipment such as derrick, flow lines, motors, etc. The oil was hauled away by truck. The contract operator was on the well daily to check the equipment and the production.

None of the Starr heirs ever protested or claimed ownership of the well. The operation of the oil well with uninterrupted possession and the failure by the Starr heirs to assert any claim is undisputed by the evidence.

In 1964 a representative of Roosth & Genecov found Wardell Jackson and Foley Jackson, (two of the Starr heirs) building a fence on the west side of Block 9. This is what precipitated the filing of the present case on June 9, 1964. A temporary injunction was issued by the Hon. Connally McKay, then Judge of the 114th District Court, restraining them from continuing with the fence or from trespassing on the property. This temporary injunction was made permanent on July 16, 1964. The

case remained inactive until February 21, 1968, when an amended petition was filed by Roosth & Genecov. On December 6, 1968, leave was obtained and an amended third party complaint in trespass to try title was filed on March 19, 1969, by the Starr heirs. It was on these pleadings that the case went to trial.

The jury made the following findings:

Special Issue No. 1:

That Roosth & Genecov, Gulf and Cities Service had adverse possession of the oil, gas and mineral estate in and under Block 9 for more than ten years prior to the filing of suit (June 9, 1964).

Special Issue No. 1–A.

That Gulf and Cities Service had adverse possession of the oil and gas mineral estate in Block 9 for more than ten years prior to March 19, 1969 (when they were first brought into the case).

Special Issue No. 2:

The same parties had adverse possession of the mineral estate in Block 9 for more than five years prior to the filing of suit (June 9, 1964).

Special Issue No. 2–A:

That Gulf and Cities Service had adverse possession of the oil and gas mineral estate in Block 9 for more than five years prior to March 19, 1969.

Special Issue No. 3:

That Chris Starr and Lula Starr and their heirs used only a limited portion (less than the whole) of Block 9 as part of their adjoining tract (Block 8).

Special Issue No. 4:

That the limited portion of Block 9 used by such heirs was not incidental to their use of the house and improvements on the adjoining premises (Block 8).

Special Issue No. 6:

That the heirs of Lula Starr and/or Lone Starr Jackson, and those claiming

under them, had adverse possession of the land in controversy (Block 9) more than ten years prior to June 9, 1964 (the date of filing suit).

Special Issue No. 7:

This adverse possession began February 26, 1938, and ended June 9, 1964.

Special Issue No. 8:

The heirs of Lula Starr and/or Lone Starr Jackson did not have five years adverse possession claiming under deeds prior to June 9, 1964.

Special Issue No. 10:

The heirs of Lula Starr brought knowledge to T. L. Tipton or to someone claiming under him that they disaffirmed the title of T. L. Tipton, or those claiming under him, between the dates July 22, 1921, and June 9, 1964.

Special Issue No. 11:

This disaffirmance occurred February 26, 1938.

Appellants by their points of error one and three contend that the trial court erred in (a) setting aside and disregarding the jury's answer to Special Issues Nos. 6, 7, 10 and 11, and (b) not holding that the deed from Chris Starr to T. L. Tipton dated July 22, 1921, was not made in payment of community property—not a valid and effective conveyance.

Appellees contend by their counter points, among other things, that (a) as community survivor, Chris Starr was authorized to make the deed to T. L. Tipton in cancellation of community debts, (b) after the deed from Chris Starr to Tipton, the possession of Chris Starr was as a tenant at sufferance of Tipton and remained as such until his (Starr) death in 1950 and so was that of his heirs thereafter; that there was no competent or legally sufficient evidence of repudiation of this relation and, therefore, there can be no adverse possession by Chris Starr or his heirs, and (c) "there is no finding of

repudiation by Chris Starr or his heirs of his tenancy at sufferance." We agree with appellees' contentions.

It is appellants' contention that the deed from Chris Starr to Tipton, "though absolute in form, was in fact a mortgage deed and never intended to convey the property in the first place." There is no evidence of probative force to support this contention. Said deed which is in evidence in this record appears to be clear and unambiguous. This contention is without merit.

■ We hold that Chris Starr as community survivor had the authority to make the conveyance to Tipton. Stone v. Jackson, 109 Tex. 385, 210 S.W. 953 (1919).

■ Since there is no evidence explaining the possession of Chris Starr after conveyance to Tipton in 1921, under the circumstances of his possession, it is presumed that he was a tenant at will or tenant at sufferance of Tipton. This relation continued until his death in 1950. In 1953 the oil well was drilled by Wheelock and Beer, (successors in title of Tipton) and has been continuously operated since that time. The suit was filed in 1964.

Whether adverse possession was ever started by Chris Starr or his heirs is dependent upon whether there was any repudiation by them of the title of Tipton and his successors in title. The only evidence bearing upon repudiation is,

1. an oil and gas lease dated February 26, 1938, by Chris Starr and the heirs of Lula Starr to W. H. Bryant, filed for record March 4, 1938, covering Block 9,

2. "Proof of Heirship and Title", and

3. an abstract of title covering Block 9 referred to but not received in evidence prepared for Caldwell, Hughes, DeLay and Allen.

■ There is no evidence in the record to show that any of these instruments came to the knowledge of Tipton or his successors in title and, therefore, they do not constitute a repudiation.

In special issues numbers 10 and 11, the jury found disaffirmance by the heirs of Lula Starr on February 26, 1938, but there is no finding or any requested issue submitted by appellants-defendants concerning disaffirmance by Chris Starr. Chris Starr was a tenant and remained as such until he died in 1950, so the issues on disaffirmance are inappropriate in this regard to discharge the burden which rested on appellants. By special issue number 3 it was found that Chris Starr and/or his heirs held partial possession, but there is no finding or repudiation by him or his heirs.

The only other evidence claimed as repudiation by the Starr heirs is continued possession which has been repeatedly held to be insufficient.

We said in Keels v. Keels, 427 S.W.2d 913 (1968) n. w. h.:

"Where the original use of the land in controversy is permissive, it is presumed that the continued use thereof is also permissive in the absence of notice to the true owner of the repudiation of such permissive use and assertion of an adverse claim. (Cases cited).

\*   \*   \*   \*   \*   \*

"It is held in this state that such repudiation must be 'plain, positive, and clear-cut,' and, until this is done, the tenant is estopped to deny the title of the owner. Houk v. Kirby Petroleum Co., 65 S.W.2d 496 (Tex.Com.App., 1933). Express disaffirmance of the tenancy is required, Benskin v. Barksdale, 246 S.W. 360 (Tex.Com.App., 1923), \*   \*   \*

"It is our view further that the mere recording of a deed to a claimant who initially entered into possession as a permissive user is no evidence of an adverse holding or the repudiation of the tenancy. Udell v. Peak, 70 Tex. 547, 7 S.W. 786 (1888). Positive notice of such repudiation of tenancy and of adverse claim must be brought home to the true

owner. (Cases cited) * * * Express notice must be brought home to the landlord and the Statute will run only from the time of such express notice."

Accord: Sweeten v. Park, 154 Tex. 266, 276 S.W.2d 794 (1955); Williams v. Martin, 395 S.W.2d 714 (Tex.Civ.App., Texarkana, 1965, ref., n. r. e.); Sandoval v. Rattikin, 395 S.W.2d 889 (Tex.Civ.App., Corpus Christi, 1965, writ ref., n. r. e.); Black v. Shell Oil Company, 397 S.W.2d 877 (Tex.Civ.App., Texarkana, 1965, writ ref., n. r. e.); 38 T.L.R. 320—adverse possession by tenants in Texas—a review of prior decisions.

Petty v. Dunn, 419 S.W.2d 417 (Tex.Civ. App., Tyler, 1967, writ ref., n. r. e.), involves a situation in many ways similar to the case at bar. In the Petty case, while Tom Lewis and wife, Ludie Lewis, owned a tract of land and occupied it as their homestead, they took into their home Marcella Dunn. Ludie Lewis died in 1939, and thereafter Tom Lewis and Marcella Dunn continued to maintain their home on the premises in question. In 1940 Tom Lewis by warranty deed conveyed the land to Ed Lewis. In 1941 Ed Lewis and Tom Lewis by joint deed conveyed the land to Walter B. Morgan. After the execution of both deeds, Tom Lewis and Marcella Dunn continued to occupy the premises and continued to maintain their home thereon. On September 25, 1957, Tom Lewis executed a warranty deed to Marcella Dunn and subsequently died on November 12, 1957. Marcella Dunn continued to live in the home until sometime during 1958 when she moved to Houston. After she moved to Houston she testified she continued to rent the house and maintained possession thereof until on or about November 1, 1961, when the record owners took possession. There was no evidence to show that Tom Lewis ever repudiated the title of his grantee, Ed Lewis, or asserted an adverse claim thereto. After Tom Lewis's death, Marcella was not in possession long enough to mature title by limitation. The joint occupancy during the time Tom and Marcella both lived on the land could not be considered because, "(i)t is well settled that to be effective as a means of acquiring title, the possession of an adverse claimant must be exclusive of the true owner. Any sort of joint or common possession by a claimant and the owner or a tenant of the owner prevents the claimant from having the requisite quality of exclusiveness. In these circumstances, the law considers the one who has title as in possession." Petty v. Dunn, supra.

■ This principal of law is applicable to the case at bar because Chris Starr, after giving the deed to Tipton, continued to possess part of the property until March, 1950, when he died, and in 1953 the record owner re-entered, drilling the oil well which is still on the property. The fact that other members of the Starr family also possessed with him is of no consequence because their possession is not of the exclusive nature necessary to adverse possession and is attributed to their relation to Chris Starr. Their possession was joint with Chris Starr who was a tenant of the owner. See Killough v. Hinds, 161 Tex. 178, 338 S.W.2d 707 (1960) which has many points of similarity to the instant case.

■ A trial court can set aside a jury verdict and render a judgment contrary thereto only where there is "no evidence" of probative force to support the finding of the jury. Otherwise, under the provisions of Rule 301, Texas Rules of Civil Procedure, the court must render judgment in keeping with the verdict of the jury. Green v. Texas Employers' Insurance Association, 339 S.W.2d 368 (Tex.Civ.App., Texarkana, 1960, writ ref., n. r. e.).

Rule 301, supra, authorizes a judgment non obstante veredicto if a directed verdict would have been proper, and the disregarding of a jury finding that has no support in the evidence. In reviewing the action of the trial court, we must consider all the testimony in the record from the stand-

point most favorable to appellants, indulging in its favor every reasonable intendment deducible from the evidence; and to sustain the court's action, it must be determined that there is no evidence having probative force upon which the jury could have made the finding in question. Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194, 199 (1952); Goodloe v. Williams, 302 S.W.2d 235 (Tex.Civ.App., Texarkana, 1957, writ ref.).

■ Having carefully considered the entire record with these rules in mind, we have concluded that the trial court was correct in ruling that there was no evidence of probative value to support the objectionable findings here under consideration. Appellants' points one and three are overruled.

In view of the disposition we are making of this case, appellants' other points of error are not reached.

Judgment of the trial court is affirmed.

McKAY, J., not participating.