**J.C. COMMANDER and Phyllis Commander, Appellants,**

v.

**Joyce WINKLER, Barbara Daily, and Eleanor Jensen, Appellees.**

No. 12–00–00365–CV.

Court of Appeals of Texas, Tyler.

Aug. 31, 2001.

Henry T. Skelton, Kugle, Skelton & Bennett, P.C., Athens, for appellants.

Eric D. Jensen, John F. Berry, Tyler, for appellees.

Panel consisted of DAVIS, C.J., WORTHEN, J., and GRIFFITH, J.

JIM WORTHEN, Justice.

J.C. Commander ("Commander") and Phyllis Commander (collectively, the "Commanders") filed suit claiming adverse possession of a 77.809 acre tract ("the property") in Anderson County against record title holders Joyce Burkitt Winkler ("Winkler"), Barbara Burkitt Daily ("Daily"), and Eleanor Burkitt Jensen ("Jensen"). The trial court entered a partial summary judgment against the Commanders on their adverse possession cause of action. Later, a final judgment was entered on the trespass to try title suit of Winkler, Daily, and Jensen, awarding them title to the property and attorney's fees. The Commanders, in two issues, contend the trial court erred in entering the partial summary judgment against them. We affirm.

## BACKGROUND

In 1941, George W. Burkitt was deeded

the surface rights to the property at issue [1] by his sister, Elizabeth B. Crane. They had inherited the property from their father, who had initially purchased it in 1915. In 1961, George W. Burkitt died. Surviving him were his widow, Joyce,[2] and two minor daughters, Barbara and Eleanor. By a will dated November 1957, Burkitt appointed Winkler as the Independent Executrix of his estate and as Trustee for the two minor children. In December 1962, an inventory and appraisement was filed in the probate styled "In the Matter of George W. Burkitt, Deceased" which listed the property, the subject of this suit.

The documentary summary judgment evidence showed that from 1964 to 1968, Winkler, in her dual capacities as Independent Executrix and Trustee, leased the property to two brothers, F.R. Prater and C.W. Prater. The evidence showed that Winkler and her daughters paid taxes on the property from 1972 to 1996. Also included in the documentary summary judgment evidence were oil, gas, and mineral leases on the real property executed by Winkler in 1978 and 1981.

In October 1998, the Commanders filed an original petition seeking to establish their ownership in the property under the ten-year adverse possession statute. Winkler, Dailey, and Jensen counterclaimed with a trespass to try title suit against the Commanders. Winkler, Dailey, and Jensen then sought a partial summary judgment against the Commanders on the latter's adverse possession cause of action.

Commander filed an amended affidavit dated June 30, 2000, in support of his response to the motion for summary judgment, which stated in relevant portions: [3]

In 1964 after I acquired the 37 acres adjacent to the 78.734 acres I discovered that the Burkitts, the predecessors in interest of defendants, at one time paid taxes on a portion of the 78.734 acres. I contacted Mrs. Winkler, whose name at that time was Mrs. Burkitt I believe, to inquire about this property. She told me she did not know anything about the property and that the Burkitts and their successors did not own the property and as far as she was concerned I could do anything I wanted to do. After that I fenced the property and have been claiming it as my own. During the course of the last 36 years I have never encountered any of the defendants nor any of their alleged predecessors in interest on this property.

I took possession of the 78.734 acres of land on or about January 1, 1964. When I took possession of the property, the tract was only partially fenced on the northern and western boundaries. These fences were in bad repair. On the eastern and southern boundaries there were traces of old fences. Beginning on or about January 1, 1964, I started repairing the fences on the northern and western boundaries. I constructed new fences along the eastern and southern boundaries so the tract was fully fenced sufficient to turn cattle. When I took possession of the property, the eastern half was badly eroded with

1. At that time, the property was surveyed as 76.33 acres, but a re-survey in 1998 showed the property to be 77.809 acres, which is the amount of acreage upon which the trial court entered its final judgment.

2. We refer to Joyce throughout the rest of this opinion as "Winkler" as she remarried in 1964. We further refer to Barbara and Elea-

nor by their respective married names of "Daily" and "Jensen."

3. In his affidavit, Commander refers to the property the subject of this suit as 78.734 acres although the 1998 re-survey showed it to be 77.809 acres.

three large gullies leading down hill in a northerly direction, emptying run-off water into a creek that cuts across the northeastern corner of the property. I partially filled in and contoured these gullies with a tractor and blade. I planted pine trees along the contour slopes to hold the soil in place. I completed this work during the summer of 1965.

As soon as I completed fencing the property, I began pasturing cattle on the property. I continually kept cattle on the property from about the middle of 1964 until 1998. At times I had as many as twelve (12) cattle and at some times as few as five (5) cattle on the property. Each winter I seeded the pasture portions of the property with winter oats and rye grass for my cattle. I also planted sweetclover on a portion of the property on the southeastern corner.

I also kept horses on the property. At times I would have as many as five (5) horses and at other times as few as two (2) horses. I built a corral adjacent to and about half way down the northern boundary line in 1965. I used it for both my horses and my cattle. I used this corral until the late 70's; we held many trail rides with friends and neighbors with the destination of the 78.734 acres usually in the fall of the year from 1964 to the late 70's.

I hunted on the property and permitted others on the property from 1964 to the present. I built deer blinds for my own use and permitted others to use them. The land in question is totally landlocked with no entrance way in and out. At the time I took possession of the property, I owned 37 acres just to the south adjacent to the tract and I used an old county road coming from the adjacent property which at that time was known as the Royal National Bank property. I maintained a camper/trailer and campsite on the 37 acres that I own south and adjacent to the property in question and I used the county road to cross my acreage to get to the property in question until about 1994 when the land owners put a gate and locked me out. At that time, I acquired another piece of property to the west of the property in question and adjacent to it through which I am able to enter into the subject property at the present time. During the period of time which I have claimed this property, I have kept the fences up consistently until about 1998. I have claimed the property as my own. Any persons I found on the property were told to leave. Until 1992, when a Dr. Burch attempted to purchase the property from the defendants herein, I had never had anyone contradict my ownership, possession and use of the property. I have consistently been present on this property at least once a week since 1964, and during some periods during the last 36 years I have been present on the property every day. Presently, I am usually on the property every day to check on something.

The trial court granted the partial summary judgment motion of Winkler, Daily, and Jensen. Later, the trial court entered a final judgment in favor of Winkler, Daily, and Jensen on their trespass to try title cause of action. Thereafter, the Commanders timely perfected this appeal.

### Standard Of Review

■ To prevail on summary judgment, the movant must show there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222 (Tex.1999). In deciding whether there is a disputed material fact issue precluding

summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Id.*

■ If a defendant, as here, moves for summary judgment, he must negate at least one element of the plaintiff's cause of action or conclusively establish an affirmative defense. *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). Once the defendant produces sufficient evidence to establish his right to summary judgment, the burden shifts to the nonmovant to produce controverting evidence raising a fact issue as to the elements negated. *See Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989).

### ADVERSE POSSESSION

In their first issue, the Commanders contend that the trial court erred in ruling that there is no genuine issue as to any material fact necessary to establish the Commanders' adverse possession of the property.

■ Adverse possession is "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX. CIV. PRAC. & REM. CODE ANN. § 16.021 (Vernon 1986). Possession must not only be actual, but also visible, continuous, notorious, distinct, hostile (*i.e.,* adverse), and of such a character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant. *Rhodes v. Cahill,* 802 S.W.2d 643, 645 (Tex.1990). One essential element of adverse possession under the ten-year limitation statute is that the claimant's possession must be an actual and visible appropriation of the land for ten or more consecutive years. *Id.;* TEX.

CIV. PRAC. & REM. CODE ANN. § 16.026 (Vernon Supp.2001).

A seminal case in our state's jurisprudence on adverse possession law is *Orsborn v. Deep Rock Oil Corp.,* 153 Tex. 281, 267 S.W.2d 781 (1954). In that case, our supreme court said that "the entry of a limitation claimant must be with the intent to claim land as his own, to hold it for himself; and such must continue to be the nature of his possession." *Id.* at 290, 267 S.W.2d at 787. The court further stated:

> [this] claim of right must be manifested by declaration or by open or visible act. If there is no verbal assertion of claim to the land brought to the knowledge of the landowner, the adverse possession must be so open and notorious and manifested by such open or visible act or acts that knowledge on the part of the owner will be presumed.

*Id.* at 291, 267 S.W.2d at 787.

■ Use of another individual's land with the acquiescence of the landowner does not ripen into adverse possession unless the evidence shows that the landowner was given notice of the adverse possession claim. *See Schultz v. Shatto,* 150 Tex. 130, 139, 237 S.W.2d 609, 614 (1951). In other words, possession of land by adverse claimants who began their entry upon the disputed land with the acquiescence of the record owner cannot establish adverse possession unless or until they give notice of the hostile nature of their possession. *Wright v. Wallace,* 700 S.W.2d 269, 271 (Tex.App.-Corpus Christi 1985, writ ref'd n.r.e.); *see also Keels v. Keels,* 427 S.W.2d 913, 916 (Tex.Civ.App.-Tyler 1968, no writ).

■ In the aforementioned affidavit, Commander specifically states that he entered the property after Winkler told him, "As far as she was concerned, I could do anything I wanted to do [with regard to

the property]." Commander then says, "After that [acquiescence to use the property]," he began engaging in all of the activities he described for the thirty-six years leading up to his affidavit made during the summary judgment proceedings. Because of Commander's admission that he entered the property only after the acquiescence of Winkler, we hold that, as a matter of law, the Commanders' possession of the property in 1964 was not hostile and, therefore, did not begin the running of the adverse possession periods as described in Texas Civil Practice and Remedies Code sections 16.021 and 16.026.

■ Where the original use of the land in controversy is permissive, it is presumed that the continued use thereof is also permissive in the absence of notice to the true owner of the repudiation of such permissive use and the assertion of an adverse claim. *Keels*, 427 S.W.2d at 915–16; *Jackson v. Genecov*, 471 S.W.2d 589, 593 (Tex.Civ.App.-Tyler 1971, writ ref'd n.r.e.). It is held in this state that such repudiation must be plain, positive, and clear-cut. *Id.* Until the permissive occupant of the land does this, he is estopped from denying the title of the owner. *See id.* Express notice must be brought home to the landowner and adverse possession will run only from the time of such express notice to the landowner. *See id.; see also Wright*, 700 S.W.2d at 271.

In his affidavit regarding his use of the property, Commander specifically states that he had no contact with the owners of the property following his entry upon it in 1964. In his affidavit, Commander does not direct the court's attention to any action which would have established hostility toward Winkler, Daily, and Jensen until they attempted to sell the property to Dr. Larry Burch in 1992. The summary judgment evidence shows that Commander confronted Burch regarding this attempted sale of the property and notified Burch that he was claiming the property as his own. Burch then backed out of his earnest money contract with Winkler, Daily, and Jensen for purchase of the property because of the Commanders' claim that they owned it. This would have been the first notice that Winkler, Daily, and Jensen had under the summary judgment evidence that the Commanders were making a claim adverse to their ownership of the property. We hold that the Commanders' notice to Winkler, Daily, and Jensen that they were claiming the property in an adverse and hostile character did not begin until 1992 and, therefore, their claim to the property by adverse possession only began to run from that date. The Commanders have failed in their summary judgment evidence to raise a fact issue as to the hostile element required to establish their adverse possession claim to the property. Thus, their claim fails as a matter of law. The Commanders' first issue is overruled.

The Commanders' second issue attacks the trial court's awarding of attorney's fees to the Appellees. However, the Commanders make this issue contingent upon this court's sustaining their first issue, which we have not done. Therefore, the Commanders' second issue is overruled.

The judgment of the trial court is ***affirmed.***