**REVERSE and REMAND and Opinion Filed June 27, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-21-00979-CV

## IN THE MATTER OF PROPERTY AT MEANDERING WAY DALLAS; JOHN F. SKELTON, III

**On Appeal from the 471st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 471-04345-2021**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Goldstein
Opinion by Justice Reichek

In this appeal from a temporary injunction in a trespass to try title action, John F. Skelton, III contends the trial court erred in enjoining him from taking any action in connection with property of which he is the undisputed record title owner. Because we conclude the defendant/counter-plaintiff Maura Schreier-Fleming, as president of the Highlands of McKamy IV & V Homeowner's Association, failed to adduce any evidence demonstrating a probable right to recover at the trial on the merits, we reverse the trial court's order and dissolve the temporary injunction.

## Background

The following relevant facts were established at the temporary injunction hearing.[1]  Skelton founded McKamy Development Corporation in 1975 or early 1976 to develop single-family residential subdivisions in the Dallas area.  Soon after forming the company, Skelton began developing a community called the Highlands of McKamy on land he purchased from his parents.  Skelton named the community after his maternal grandfather, Lyle McKamy, who had previously owned the property.

The Highlands of McKamy includes five developments.  The land at issue in this case is at the southern entrance to the fourth development.  Skelton testified he used the lot at the southern entrance to build a brick wall with a Highlands of McKamy sign on it.  He also built a gazebo and installed landscaping and sidewalks on the lot.  Skelton stated he developed the lot in this way because he wanted an attractive entryway into the community to help sell the other lots.

Skelton testified that, typically, once a development project is completed, the developer transfers any remaining unsold lots to the homeowners association.  That did not happen in this case because, according to Skelton, two of the builders who lived in the area objected to the creation of a homeowners association.  Instead,

---

[1] Although the trial court recited various findings in its temporary injunction order, such findings do not carry the same weight on appeal as findings made under rule 296 of the Texas Rules of Civil Procedure and are not binding when we are reviewing a trial court's exercise of discretion in granting a temporary injunction.  *Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 884 (Tex. App.—Dallas 2003, no pet.).

Skelton stated, he agreed with the builders that, if they would perform the maintenance on the southern entrance lot, he would leave the improvements and not sell the property as a residential lot. Legal title to the property was subsequently transferred from McKamy Development Corporation to Skelton when the development company dissolved.

Ten years after the community was built, the Highlands of McKamy IV & V Homeowner's Association was formed. The HOA's current president, Fleming, testified the association maintained the lot at the southern entrance as a common area, including planting and maintaining landscaping, installing lighting and irrigation systems, and putting up holiday decorations. Fleming further stated the HOA rebuilt the gazebo and placed large sculptures that were on loan from a community resident on the property. Fleming acknowledged that the Highlands of McKamy signage was installed prior to the creation of the HOA. But it was her belief that a previous, informal homeowner's association had installed the sign. Fleming additionally testified that all the bills associated with maintaining the common area, including water for the sprinkler system and electricity for the lighting system, were paid by the HOA. She conceded, however, that the HOA never paid any property taxes for the lot.

According to Fleming, the community made extensive use of the common area such as hosting weddings, Easter egg hunts, and other social gatherings. At no point did the HOA seek Skelton's permission for anything done on the lot.

In 2014, Skelton received an offer from the City of Dallas to purchase the lot. Skelton stated it was at this point he discovered a formal homeowner's association for the Highlands of McKamy IV & V had formed. Skelton contacted David Schneider, the president of the HOA at that time, to see if the association wanted to match the City's offer to purchase the lot.

On February 19, 2014, Skelton sent Schneider an email stating the following:

> My name is John Skelton and back in the '70s a company of which I was a Partner, McKamy Development Company, developed Highlands of McKamy. That company was dissolved and in the distribution of the assets, I became owner of the little park with the gazebo, entry marker, etc. I paid for the gazebo and all the improvements but apparently the HOA has been maintaining it. But I continue to pay taxes on it. I would like to convey it to the HOA for a sum equal to the value of the improvements. If we cannot agree on a figure we can get an appraisal done. I have tried to do this in the past and been ignored. Hopefully this will not continue to be the case. I know some of the homeowners and they characterize you as a nice guy. Please email me or phone me back.

That same day, Schneider responded,

> Hi John,
>
> Absolutely we would like to talk to you. I hear you are a good guy as well (at least Mr. French says so :). And I want to personally say what a beautiful neighborhood you have built! I have only been here a relatively short time, but in that time I have both walked and biked every street a few times. I love the layout and I believe time has been very good to the character of your development.
>
> You probably know there is a new board. We have found a number of items of business that were not suitably addressed in the past. If it is okay with you, I will discuss the gazebo land/improvements with a couple of the other directors. There should be some approach which will reasonably balance your needs with those of the homeowners. I

will get back with you very shortly. And I would really like to meet you and shake your hand.

In late March, Skelton met with Schneider and two other members of the HOA board to discuss the HOA's purchase of the property. The next day Skelton sent Schneider the following email,

> David, I enjoyed meeting everyone last night. Hope I dispelled some myths.

> On the park, as I recall, I spent $15,000 for the gazebo, about $1,000 for the sidewalks, $1,000 for the landscaping, $4,000 for the wall and $3,000 for the bronze plaque. The value of the land is subjective but I would suggest taking an average of what the lots are valued on the tax roll per square foot and multiplying it by the number of square feet in the park. And I have probably spent $1,000 on the taxes since 1979.

> I would add all this together, divide it by the number of homeowners and send out a special assessment which would constitute a lien if not paid. My guess is the assessment would be about $150. This is what I have done in other HOAs I have been involved in.

> I think you could rent out the Gazebo for $500 for weddings and for family reunions and make all the money back plus give the HOA a continuing income. And if everyone has a little investment in the property they will use it more and take more pride in the neighborhood.

> Just a thought…..welcome any suggestions.

The HOA board met on May 4 and discussed purchasing the "Gazebo property" from Skelton. Based on a purported $1,000 valuation of the property on the tax rolls, the board voted to offer Skelton $500 plus reasonable costs for closing. Skelton rejected the offer as insufficient, and no sale of the property to the HOA occurred. Skelton also did not proceed with selling the property to the City at that time.

In 2021, Fleming became aware that the City had made another offer to Skelton to purchase the lot. In response, Fleming filed an affidavit of adverse possession claiming the HOA owned the property. In her affidavit, Fleming listed the various improvements made on the lot as well as the activities for which the lot was used. Fleming asserted the HOA had continuously maintained the lot since 1987 and (1) "[t]he land has always been assumed and believed to be owned by the Highlands of McKamy HOA," (2) the HOA "has used the land openly and obviously since 1987, hostile to the interests of any other alleged property owner," and (3) the land was "for the exclusive use of HOA members/owners."

After receiving notice from the county clerk's office that an affidavit of adverse possession had been filed, Skelton brought this suit to try title. In his petition, Skelton asserted the HOA's use of the property was always done with his consent and there had been no open or obvious adverse possession.

Fleming filed an answer and asserted counterclaims to quiet title in favor of the HOA. Fleming further sought an injunction to prevent Skelton from selling or otherwise taking action affecting the HOA's use and control of the property pending a trial on the merits.

Following the injunction hearing at which Skelton and Fleming testified, the trial court signed a temporary injunction to "preserve the status quo as to the use and maintenance of the Common Green." The court concluded the HOA had established a probable right to recover on its claims and, in the absence of an injunction, Skelton

–6–

was likely to sell the property or restrict the HOA's ability to use or access the area, causing the HOA irreparable harm. The trial court enjoined Skelton from selling the property, removing anything from the property, or taking any action that would prevent the HOA members from using the property. Skelton then brought this interlocutory appeal.

## Analysis

A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). A temporary injunction may issue only if the applicant establishes (1) a cause of action against the opposing party, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury if the injunction is not granted. *Id*. "The party seeking an injunction must have at least one valid legal theory to support a probable right to recover." *Marketshare Telecom, L.L.C. v. Ericsson, Inc.*, 198 S.W.3d 908, 922 (Tex. App.–Dallas 2006, no pet.); *see also Branch Banking & Trust Co. v. TCI Luna Ventures, LLC,* No . 05-12-00653-CV, 2013 WL 1456651, at *2–6 (Tex. App.—Dallas Apr. 9, 2013, no pet.) (mem. op.) (reversing temporary injunction after determining no evidence presented of at least one element of applicant's claims). While the applicant need not prove it will actually prevail at trial, it must raise a bona fide issue as to its right to ultimate relief, and it cannot do this without presenting some evidence to support every element of at least one valid legal theory. *See TCI Luna*, 2013 WL 1456651, at *2–6.

A trial court has broad discretion in deciding whether to grant or deny a temporary injunction. *Butnaru*, 84 S.W.3d at 204. This discretion is not unlimited, however, and does not extend to the erroneous application of the law to undisputed facts. *Alert Synteks, Inc. v. Jerry Spencer, L.P.*, 151 S.W.3d 246, 253 (Tex. App.—Tyler 2004, no pet.). It is also an abuse of discretion for a trial court to issue a temporary injunction where no evidence to support the injunction was presented. *Id.*; *TCI Luna*, 2013 WL 1456651, at *2–6. Determining whether the applicant has presented evidence showing a probable right to recover requires "a thorough review of the law applicable to the parties' claims and defenses." *Cameron Int'l Corp. v. Guillory*, 445 S.W.3d 840, 846 (Tex. App.–Houston [1st Dist.] 2014, no pet.). Even though we review an applicant's probable right of recovery, we do not reach the merits of the underlying dispute on interlocutory appeal and will not assume the evidence presented at the temporary injunction hearing will be the same as the evidence developed at a full trial on the merits. *TCI Luna*, 2013 WL 1456651, at *2.

The sole basis upon which Fleming asserts the HOA has title to the property is adverse possession. Adverse possession is an actual and visible appropriation of real property, commenced and continued under a claim of right, that is inconsistent with, and hostile to, the claim of another person. TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.021 (1) & 16.026. The possession must be not only actual and visible, but also continuous, notorious, distinct, hostile, and of such a character as to indicate *unmistakably* an assertion of a claim of *exclusive* ownership such that the true owner

is given notice of the adverse claim. *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990). "If there is no verbal assertion of claim to the land brought to the knowledge of the landowner, the adverse possession must be so open and notorious and manifested by such open or visible act or acts that knowledge on the part of the owner will be presumed." *Orsborn v. Deep Rock Oil Corp.*, 267 S.W.2d 781, 787 (Tex. 1954). The doctrine of adverse possession is a harsh one, taking real property from a record owner without express consent or compensation. *Tran v. Macha*, 213 S.W.3d 913, 915. Because of this, the law requires the intentions of the party claiming adverse possession be made very clear. *Id.*

Use of another individual's land with the landowner's acquiescence does not ripen into adverse possession unless the evidence shows the landowner was given notice of the adverse possession claim. *Commander v. Winkler*, 67 S.W.3d 265, 269 (Tex. App.—Tyler 2001, pet denied). "In other words, possession of land by adverse claimants who began their entry upon the disputed land with the acquiescence of the record owner cannot establish adverse possession unless or until they give notice of the hostile nature of their possession." *Id.* The notice to the landowner must be express and the repudiation of the permissive use of the land must be plain, positive, and clear-cut. *Tunnell v. Gary W. Compton and Loretta Compton Tr.*, No. 07-16-00406-CV, 2018 WL 2451821, at *4 (Tex. App.—Amarillo May 31, 2018, pet. denied) (mem. op.).

The character of the use required to establish adverse possession varies with the nature of the land at issue and with its adaptability to a particular use. *Kazmir v. Benavides*, 288 S.W.3d 557, 561 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The evidence presented at the injunction hearing showed that Skelton first developed the lot at issue to be used as a common area for the Highlands of McKamy neighborhood to attract purchasers for the remaining lots. Once the development was finished, no homeowner's association was created to which ownership of the lot could be transferred. Accordingly, Skelton's development company retained ownership of the land with title eventually being transferred to Skelton individually when the company dissolved. Although there is some dispute as to whether there was an agreement between Skelton and the HOA for maintenance of the lot, is undisputed that Skelton left the lot as an area to be used by the residents of the development.

Over the years that followed, the residents of the Highlands of McKamy used the property in the precise manner Skelton originally designed it to be used – as a gathering place for the people who lived in the development. Fleming relies on the HOA's extensive maintenance of the property as evidence of the association's possession being open and hostile. But mere maintenance of property, without more, does not give notice of exclusive adverse possession. *Bywaters v. Gannon*, 686 S.W.2d 593, 595 (Tex. 1985) (mowing grass, planting flowers, and maintaining hedge are not acts of a hostile character sufficient to give notice of adverse

–10–

possession); *See Allen and Martha Lewis Revocable Tr. v. Perales*, No. 01-09-00140-CV, 2010 WL 3212125, at \*6 (Tex. App.—Houston [1st Dist.] Aug. 12, 2010, no pet.) (mem. op.) (planting grass and tree and maintaining property insufficient evidence of hostile possession to sustain claim of adverse possession). Nor does the installation of a sprinkler system, lighting, and removable artwork constitute evidence of hostile possession. *See id*. at \*7 (no evidence that installation of sewer was of such a character as to indicate unmistakably an assertion of claim of exclusive ownership). The HOA's maintenance and improvement of the property is consistent with Skelton's design that the residents use the property as a common area.

Fleming testified the HOA acted based on the understanding that it was the legal and rightful owner of the property. But, "[m]erely entering upon land with the belief of ownership, without asserting a claim of right at the outset, does not suffice as evidence of hostile adverse possession." *Hoffman v. Mena*, No. 03-19-00409-CV, 2021 WL 2460637, at \*4 (Tex. App.—Austin June 17, 2021, no pet.) (mem. op.). Although Fleming stated the HOA consistently believed itself to be the lot's rightful owner, the evidence presented at the hearing shows it never asserted that claim until filing the affidavit of adverse possession in 2021. Fleming conceded the HOA never paid any of the taxes owed on the property.[2] And, in 2014, the HOA

---

[2] Fleming argues in her brief that Skelton failed to show he paid the taxes owed on the property because the evidence he presented at the hearing showed only that he made payments for the most recent tax year.

board voted to make an offer to purchase the lot from Skelton. An offer to purchase disputed property from the record owner is an admission that title is held by the record owner. *Brown v. Snider Indus., LLP*, 528 S.W.3d 620, 629 (Tex. App.—Texarkana 2017, pet. denied).

In short, Fleming presented no evidence at the hearing that the HOA ever acted in a manner, or occupied the lot in a way, that would put Skelton on notice it was repudiating his title ownership of the property. Because Fleming failed to present evidence to support a prima facie claim of adverse possession, the trial court erred in granting the temporary injunction. *See TCI Luna*, 2013 WL 1456651, at *2–6; *see also Coombs v. City of Houston*, 35 S.W.2d 1066, 1070 (Tex. App.—Galveston 1930, no writ).

Having concluded the record does not provide any basis for the trial court's finding that Fleming showed a probable right of recovery on final trial of the HOA's claim for adverse possession, we do not reach the remainder of Skelton's arguments. We resolve Skelton's first issue in his favor.

---

Even assuming Skelton failed to establish a history of paying taxes for the lot, Fleming fails to explain how this evidence is relevant to the issue of whether the HOA acted in a manner that would give Skelton plain, positive, and clear-cut notice that it was adversely possessing his property.

We reverse the trial court's temporary injunction order, dissolve the temporary injunction, and remand the case to the trial court for further proceedings.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

210979F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE MATTER OF PROPERTY
AT MEANDERING WAY
DALLAS; JOHN F. SKELTON, III

No. 05-21-00979-CV

On Appeal from the 471st Judicial
District Court, Collin County, Texas
Trial Court Cause No. 471-04345-
2021.
Opinion delivered by Justice
Reichek. Justices Partida-Kipness
and Goldstein participating.

In accordance with this Court's opinion of this date, the order of the trial court granting a temporary injunction in favor of MAURA SCHREIER-FLEMING, AS PRESIDENT OF HIGHLANDS OF MCKAMY IV & V HOMEOWNERS ASSOCIATION is **REVERSED**, the temporary injunction is **DISSOLVED**, and this cause is **REMANDED** to the trial court for further proceedings.

It is **ORDERED** that appellant JOHN F. SKELTON, III recover his costs of this appeal from appellee MAURA SCHREIER-FLEMING, AS PRESIDENT OF HIGHLANDS OF MCKAMY IV & V HOMEOWNERS ASSOCIATION.
.

Judgment entered June 27, 2022