ACCEPTED
04-14-00527-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
3/18/2015 4:56:48 PM
KEITH HOTTLE
CLERK

NO. 04-14-00527-CV

_____

IN THE FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
03/18/2015 4:56:48 PM
KEITH E. HOTTLE
Clerk

_____

ANNA MARIA SALINAS SAENZ, ET AL.,
Appellants,

v.

THORP PETROLEUM CORP., ET AL.,
Appellees

_____

Appeal from the 229th District Court of Starr County, Texas
No. DC-04-120, Hon. Ana Lisa Garza, Presiding

_____

## APPELLEES' JOINT BRIEF

| | |
|---|---|
| **SCOTT, DOUGLASS, & MCCONNICO, L.L.P.** | **JONES GILL LLP** |
| Mark W. Hanna | Lee S. Gill |
| State Bar No. 24051764 | State Bar No. 07921360 |
| mhanna@scottdoug.com | gill@jonesgill.com |
| Kennon L. Wooten | 6363 Woodway, Suite 1100 |
| State Bar No. 24046624 | Houston, Texas 77057 |
| kwooten@scottdoug.com | (713) 652-4068 Telephone |
| 303 Colorado Street, Suite 2400 | (713) 651-0716 Facsimile |
| Austin, Texas 78701-2589 | |
| (512) 495-6300 Telephone | *Attorney for Appellees Thorp* |
| (512) 495-6399 Facsimile | *Petroleum Corporation; El Paso* |
| | *Production Company; El Paso E&P* |
| | *Company, LP; El Paso Exploration* |
| | *& Production Management, Inc.;* |
| *Attorneys for Appellee* | *Stanco Land Management, LLC, and* |
| *Smith Production Inc.* | *Meredith Land & Minerals Company* |

## ORAL ARGUMENT CONDITIONALLY REQUESTED

1176340

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................... i

INDEX OF AUTHORITIES ............................................................................ iv

STATEMENT OF THE CASE ....................................................................... viii

ISSUES PRESENTED ..................................................................................... ix

RECORD AND APPENDIX .............................................................................. x

OVERVIEW OF THIS APPEAL ....................................................................... 1

STATEMENT OF FACTS .................................................................................. 2

    A.    Juan and Ynez Salinas conveyed 17/32 of their mineral interest to third parties and 150 acres to their son Octavio before conveying undivided interests in the remaining property to their 12 children—the Salinas Siblings. ....................................................... 2

    B.    In October 1968, Leoncio deeded his interests in the Subject Property to Horacio and, in doing so, referenced the partition of the Subject Property ............................................................................. 3

    C.    In December 1968, the nine Salinas Siblings who owned surface interests in the Subject Property entered a Partition Agreement to divide the surface into nine Parcels and divided their mineral interests along the same lines ......................................... 4

    D.    For 36 years, nobody questioned the validity of the Partition Agreement and everybody acted consistently with the Partition Agreement's validity. ........................................................................ 7

    E.    In 2001, Thorp drilled productive wells on Parcels 5 and 8 and paid royalties on production in accordance with the Partition Agreement that had been in place since 1968. .................................... 9

    F.    In 2004, the plaintiffs filed suit to try to undo the deal their parents struck. ................................................................................. 10

SUMMARY OF ARGUMENT ........................................................................ 10

ARGUMENT .................................................................................................. 13

1176340

A. The trial court properly granted Appellees' motions for summary judgment on at least four grounds, any one of which will suffice to affirm the trial court's judgment and render judgment for Appellees in this matter. .............................................. 13

    1. The trial court properly granted summary judgment that the Partition Agreement is valid and enforceable because the Partition Agreement was signed by all parties whose interests were affected by it....................................................... 13

        a. Texas law does not require all parties with a mineral interest in property to join in a partition agreement regarding that property. ................................ 14

        b. Juana did not need to sign the Partition Agreement because it does not affect her mineral interest in the Subject Property. Indeed, she and her heirs and assigns have always been treated as undivided mineral-interest holders and, for that reason, have no standing to attack the Partition Agreement's validity here.................................................... 16

        c. Like Juana, Leoncio did not need to sign the Partition Agreement because he had already conveyed all of his interest in the Subject Property to his brother Horacio. .................................................. 19

        d. Appellants cite no authority that actually supports their claim that the Partition Agreement is invalid without Juana's and Leoncio's signatures. .................... 23

    2. Even if the Partition Agreement were ineffective due to the lack of Juana's and Leoncio's signatures, summary judgment is proper because Appellants accepted benefits of the Partition Agreement, ratified it, acquiesced in it, and are estopped to deny its validity now. .............................. 26

    3. Summary judgment is also proper because Appellants' claims are barred by adverse possession................................ 32

ii

1176340

a.  The portion of the minerals that remain unsevered from the surface were adversely possessed along with the surface. ............................................ 32

b.  The summary judgment evidence established all of the elements of adverse possession, and Appellants presented no evidence to the contrary............................ 34

c.  Even if Ana Saenz "consented" to the use of the surface by the siblings and their successors, her consent could not have been granted until after the 10-year statute of limitations had expired...................... 38

4.  At a minimum, summary judgment is proper as against the parties who joined in the Partition Agreement, as well as their successors. .................................................. 40

B.  Even if there were a fact question relating to the Partition Agreement, Appellants' claim for damages in their trespass-to-try title action should be treated as final because Appellants have not challenged or briefed the summary judgment ground that they have no evidence of such damages...................................... 41

CONCLUSION AND PRAYER........................................................... 43

CERTIFICATE OF SERVICE............................................................ 45

CERTIFICATE OF COMPLIANCE .................................................... 47

iii

1176340

# INDEX OF AUTHORITIES

## CASES

*Americo Life, Inc. v. Myer*,
> 440 S.W.3d 18 (Tex. 2014).........................................................................17

*Beets v. Hickok*,
> 701 S.W.2d 281 (Tex. App.—Tyler 1985, no writ) ...................................35

*Birdwell v. Am. Bonding Co.*,
> 337 S.W.2d 120 (Tex. App.—Fort Worth 1960, writ ref'd n.r.e.) ..............33

*Chandler v. Hartt*,
> 467 S.W.2d 629 (Tex. Civ. App.—Tyler 1971, writ ref'd n.r.e.)................16

*City of San Antonio v. Greater San Antonio Builders Ass'n*,
> No. 04-12-00745-CV, 2013 WL 2247468 (Tex. App.—San Antonio
> May 22, 2013, no pet.) ...............................................................................18

*Coker v. Coker*,
> 650 S.W.2d 391 (Tex. 1983).......................................................................16

*Commander v. Winkler*,
> 67 S.W.3d 265 (Tex. App.—Tyler 2001, pet. denied) ...............................39

*Concord Oil Co. v. Pennzoil Exploration & Prod. Co.*,
> 966 S.W.2d 451 (Tex. 1998).......................................................................20

*DaimlerChrysler Corp v. Inman*,
> 252 S.W.3d 299 (Tex. 2008).......................................................................18

*De Rodriguez v. Hinnant*,
> 267 S.W. 471 (Tex. 1925)...........................................................................31

*Dixon v. Henderson*,
> 267 S.W.2d 869 (Tex. App.—Texarkana 1954, no writ) ...........................33

*Elliott v. Nelson*,
> 251 S.W. 501 (Tex. 1923)...........................................................................33

1176340

*Garza v. De Montalvo*,
217 S.W.2d 988 (Tex. 1949)................................................................ 14, 15, 16

*Glover v. Union Pac. R.R. Co.*,
187 S.W.3d 201 (Tex. App.—Texarkana 2006, pet. denied) ....................... 35

*Graham v. Prochaska*,
429 S.W.3d 650 (Tex. App.—San Antonio 2013, pet. filed) ...................... 20

*Hamilton v. Hamilton*,
280 S.W.2d 588 (Tex. 1955).................................................................. 16, 21

*Hausser v. Cuellar*,
345 S.W.3d 462 (Tex. App.—San Antonio 2011, pet. denied)................... 20

*Heckman v. Williamson Cnty.*,
369 S.W.3d 137 (Tex. 2012)........................................................................ 19

*Heritage Res., Inc. v. NationsBank*,
939 S.W.2d 118 (Tex. 1996)........................................................................ 20

*High v. Tarver*,
25 S.W. 1098 (Tex. Civ. App. 1894).......................................................... 29

*In re Estate of Forister*,
421 S.W.3d 175 (Tex. App.—San Antonio 2013, pet. denied)................... 19

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*,
341 S.W.3d 323 (Tex. 2011)........................................................................ 16

*J.M. Davidson v. Webster*,
128 S.W.3d 223 (Tex. 2003)........................................................................ 16

*Joyner v. Christian*,
113 S.W.2d 1229 (Tex. 1938)............................................................... passim

*King Ranch, Inc. v. Chapman*,
118 S.W.3d 742 (Tex. 2003)........................................................................ 35

*Larrison v. Walker*,
149 S.W.2d 172 (Tex. App.—Texarkana 1941, pet. ref'd)......................... 22

v

1176340

*Lasater v. Ramirez*,
212 S.W. 935 (Tex. 1919)......................................................................... 22

*Lickel v. White*,
819 S.W.2d 459 (Tex. 1991)...................................................................... 20

*López v. Montemayor*,
131 S.W.3d 54 (Tex. App.—San Antonio 2003, pet. denied)..................... 42

*M.D. Anderson Cancer Ctr. v. Novak*,
52 S.W.3d 704 (Tex. 2001)........................................................................ 18

*Potter v. Kaufman & Broad Home Sys. of Tex., Inc.*,
137 S.W.3d 701 (Tex. App.—San Antonio 2004, no pet.) ........................ 42

*Republic Production Co. v. Lee*,
121 S.W.2d 973, 262 (Tex. 1938)........................................................ 35, 40

*Robinson v. O'Connor*,
181 S.W.2d 935 (Tex. Civ. App.—El Paso 1944, writ ref'd w.o.m.) .......... 32

*Rogers v. Ricane Enters., Inc.*,
884 S.W.2d 763 (Tex. 1994)...................................................................... 30

*Stradt v. First United Methodist Church of Huntington*,
573 S.W.2d 186 (Tex. 1978)............................................................ 23, 24, 25

*Thomas v. Southwestern Settlement and Development Company*,
123 S.W.2d 290 (Tex. 1939)............................................................... passim

*Villareal v. Chesapeake Zapata, L.P.*,
No. 04-08-00171-CV, 2009 WL 1956387 (Tex. App.—San Antonio
July 8, 2009, pet. denied)........................................................................... 39

*Villareal v. Guerra*,
446 S.W.3d 4040 (Tex. App.—San Antonio 2014, pet. denied)................. 34

*Waco Ind. Sch. Dist. v. Gibson*,
22 S.W.3d 849 (Tex. 2000)........................................................................ 18

1176340

*Ward v. Ward*,
No. 04-12-00703-CV, 2014 WL 470153 (Tex. App.—San Antonio
Feb. 5, 2014, pet. filed) ................................................................ 42

*Wilderness Cove, Ltd. v. Cold Spring Granite Co.*,
62 S.W.3d 844 (Tex. App.—Austin 2001, no pet.) ...................................... 21

*Wright v. Wright*,
274 S.W.2d 670 (1955) .................................................................. 27

## **STATUTES**

Tex. Civ. Prac. & Rem. Code Ann. § 16.021(1) (West 2002) ................................ 32

Tex. Civ. Prac. & Rem. Code Ann. § 16.026(a) (West 2002) ........................... 37, 40

Tex. Prop. Code Ann. § 22.021(d) (West 2014) ......................................... 41

Tex. Prop. Code Ann. § 22.022 (West 2014) ............................................ 41

## **RULES**

Tex. R. Civ. P. 783(f) ................................................................. 41

Tex. R. Civ. P. 805 ................................................................... 41

1176340

## STATEMENT OF THE CASE

*Nature of Proceedings*:    This is a trespass-to-try-title case regarding mineral interests in land. Plaintiffs/Appellants seek to invalidate a 1968 partition agreement, claiming it is invalid because it was not signed by all tenants who owned a mineral interest in the land at issue.

*Trial Court*:    229th District Court of Starr County, Texas; Honorable Ana Lisa Garza Presiding.[1]

*Course of Proceedings:*    Plaintiffs brought a trespass-to-try-title action regarding mineral interests in land that was partitioned in 1968 by an agreement signed by all parties claiming an interest in the surface.[2] The agreement divided the surface into nine parcels and split the parties' mineral interests along those lines.[3] It went unchallenged for 36 years. Plaintiffs then sued the current mineral-interest owners and the mineral lessees who paid royalties based on the agreement.[4] Plaintiffs sought a declaration that the agreement was void and that they continued to own undivided mineral interests in parcels which the partition did not allot to their predecessors.[5] They also sought damages.[6] The owners and the lessees, Thorp et al. and Smith Production, moved for summary judgment on several grounds, including that the partition agreement was valid, Plaintiffs' claims were barred, and Plaintiffs were not entitled to damages.[7] The trial court granted the motions without specifying grounds.[8] This appeal followed.[9]

---

[1] Judge Garza signed the final judgment in this case. *See* Pl. App. A. Her predecessor, Judge Alex Gabert, signed the summary judgment orders at issue in this appeal. *See* Pl. App. C-E.

[2] 10 CR 3495-96.

[3] 7 CR 2338-59 (Partition Agreement).

[4] 1 CR 41 (Original Petition); 10 CR 3479-99 (Ninth Amended Petition).

[5] 10 CR 3496.

[6] 10 CR 3495-96.

[7] 14 CR 5294.

[8] 9 CR 3316-17; 9 CR 3319.

1176340

## ISSUES PRESENTED

1.  Did the trial court properly grant Appellees' summary judgment motions and declare the partition agreement valid and enforceable on the ground that the agreement is signed by all parties whose property interests it affected?

2.  Even if the partition agreement were lacking one or more necessary signatures, is summary judgment proper on the ground that the agreement is nonetheless binding on Appellants because (a) they cannot accept the benefits of the partition agreement—a divided surface estate—while rejecting its burdens—a divided mineral estate; (b) they ratified and acquiesced in the divisions within the partition agreement and are estopped to deny the agreement's binding effect now; (c) adverse possession bars their ability to challenge the agreement; and/or (d) Appellants whose predecessors signed the agreement are bound by their predecessors' signatures thereto?

---

[9] 14 CR 5307-09.

1176340

RECORD AND APPENDIX

The record on appeal includes a 14-volume Clerk's Record and a one-volume Supplemental Clerk's Record. Citations to the Clerk's Record will be to volume and page number: __ CR __. This Joint Brief does not contain any citations to the Supplemental Clerk's Record.

There is also a six-volume Reporter's Record. This Joint Brief does not contain any citations to the Reporter's Record.

Citations to items in the Appendix to Appellants' Brief will be to "Pl. App." Citations to items in the Appendix to this Joint Brief will be to "App."

The following items are included in the attached Appendix:

App. A        Affidavit of Fausto Salinas (8 CR 2770-72)

App. B        Warranty Deed (the "Leoncio-Horacio Deed") (7 CR 2326-27)

App. C        Map of Nine Parcels in Partition Agreement (8 CR 2807)

1176340

TO THE HONORABLE COURT OF APPEALS:

This Joint Brief is filed by Smith Production Inc. ("Smith Production") and Thorp Petroleum Corporation; El Paso Production Company; El Paso E&P Company, LP; El Paso Exploration & Production Management, Inc.; Stanco Land Management, LLC; and Meredith Land & Minerals Company (together "Thorp et al." and collectively with Smith Production, "Appellees").

## OVERVIEW OF THIS APPEAL

In this appeal, the Court needs to resolve only one substantive issue: is the 1968 partition agreement valid and enforceable? That issue should be resolved affirmatively because all parties affected by the partition agreement joined in the partition agreement. Moreover, any claim that the partition agreement is invalid is barred by Appellants' acceptance of benefits under, ratification of, and acquiescence in the partition agreement, as well as adverse possession. At a minimum, the partition agreement binds those who signed it and their successors.

The trial court granted Appellees' summary judgment motions and entered a final judgment declaring the partition agreement to be "valid and enforceable for all purposes as to all parties to this suit" and ordering that the underlying "Plaintiffs take nothing by their suit against all Defendants."[10] The trial court's judgment was correct and should be affirmed by this Court.

---

[10] Pl. App. A at 4, ¶ 3 (14 CR 5294).

1176340

## STATEMENT OF FACTS

The statement of facts in Appellants' Brief is incomplete and thus potentially misleading. The following statement of facts is intended to give the Court all of the facts the Court needs in order to resolve the legal issues properly on appeal.

A.   <u>Juan and Ynez Salinas conveyed 17/32 of their mineral interest to third parties and 150 acres to their son Octavio before conveying undivided interests in the remaining property to their 12 children—the Salinas Siblings.</u>

The property at issue was originally part of an estate consisting of 1,284 acres in Starr County, Texas, that was owned by spouses Juan and Ynez Salinas.[11] They conveyed 17/32 of their mineral interest to third parties between 1932 and 1940,[12] and they conveyed 150 acres to their son Octavio Salinas in 1963.[13] The property remaining after the conveyances—the entire surface of 1,134 acres and the 15/32 mineral interest—is the subject of this appeal (the "Subject Property").

In 1964, Mr. and Mrs. Salinas conveyed to each of their 12 children (the "Salinas Siblings") equal undivided shares in the Subject Property.[14] The Salinas Siblings were (1) Juana Salinas Garcia, (2) Leoncio Salinas,[15] (3) Horacio B. Salinas, (4) Ester Salinas, (5) Octavio Salinas, (6) Adan Salinas, (7) Ascencio

---

[11] 7 CR 2297. Ynez is also referred to as "Ines" in some parts of the record. *See, e.g.*, 7 CR 2328.

[12] 8 CR 2570 (Instruments 2-3 in Thorp's Abstract); 8 CR 2582-85 (Deeds).

[13] 7 CR 2315.

[14] 7 CR 2320-21.

[15] One of the Plaintiffs/Appellants, also named Leoncio Salinas, is one of the sons of Adan Salinas. The Salinas Sibling named Leoncio Salinas is his uncle and is now deceased.

1176340

Salinas, (8) Arnaldo Salinas, (9) Flavio Salinas, (10) Ramiro Salinas, (11) Emma Salinas Benavides, and (12) Hermila Salinas Flores.[16] They became cotenants of undivided interests in the Subject Property as a result of the 1964 conveyance.[17]

Between 1964 and the fall of 1968, there were several conveyances of the Subject Property that are not at issue in this appeal. First, the Salinas Siblings and their parents joined in deeding 92.699 acres in the Subject Property to sibling Adan.[18] Second, sibling Ester died intestate, unmarried, and without issue, and all of the Salinas Siblings (except Ascencio) and their mother deeded Ester's interest to Ascencio.[19] Third, sibling Juana deeded to her brother Octavio all of her interest in the Subject Property's surface.[20] Juana expressly reserved her mineral interest.[21]

B.     In October 1968, Leoncio deeded his interests in the Subject Property to Horacio and, in doing so, referenced the partition of the Subject Property.

In or around September 1968, the Salinas Siblings discussed a partition agreement relating to the Subject Property and orally "agreed that Horacio would get his acreage in the southeast corner and . . . that Horacio was buying Leoncio's interest so that Horacio would be receiving 214 acres, being made up of the 94.5

---

[16] 7 CR 2320.

[17] 7 CR 2320. For ease of identification and for brevity's sake, the Salinas Siblings will hereinafter be referred to by their first names.

[18] 8 CR 2570 (Instruments 16-18 in Thorp's Abstract); 8 CR 2592-600 (Deeds).

[19] 8 CR 2570 (Instrument 26 in Thorp's Abstract); 8 CR 2613-22 (Deed) (providing that "Ines" Salinas was a widow by the time of the conveyance—i.e., Juan Salinas was also deceased).

[20] 7 CR 2322-25.

[21] 7 CR 2322-25.

3

acres he was entitled to [approximately 1/12 of 1,134 acres], the 94.5 acres he was buying from Leoncio, and the 25 acres of [adjacent] property" that Horacio had purchased previously from third parties.[22] The surface of the Subject Property was subsequently surveyed in accordance with that oral agreement.[23]

On October 9, 1968, Leoncio deeded to Horacio a tract of land described as "[a]ll that certain tract set aside, or to be set aside, to Grantor, under that Agreement heretofore entered into by and between Grantor and Grantee, and their brothers and sisters, and more particularly described as follows: . . . Parcel No. 1, containing 214.164 acres of land," which is then described by metes and bounds.[24] This deed (the "Leoncio-Horacio Deed") has no mineral reservation and conveyed Parcel 1 "together with all and singular the rights and appurtenances thereto."[25] It was intended to convey all of Leoncio's interest in the Subject Property.[26]

C.  <u>In December 1968, the nine Salinas Siblings who owned surface interests in the Subject Property entered a Partition Agreement to divide the surface into nine Parcels and divided their mineral interests along the same lines.</u>

In December 1968, the nine Salinas Siblings who owned a surface interest (along with their spouses) memorialized an agreement to partition their respective rights, title, and interests in the Subject Property (the "Partition Agreement"), and

---

[22] 8 CR 2770-71 (App. A at ¶¶ 6-8).

[23] 8 CR 2771 (App. A at ¶ 9); 8 CR 2807 (App. C).

[24] 7 CR 2326-27 (App. B).

[25] *See* 7 CR 2326-27 (App. B).

[26] *See* 8 CR 2771-72 (App. A at ¶ 11).

1176340

they recorded it in the Deed Records of Starr County.[27] The Partition Agreement does not contain signature lines for Juana or Leoncio.[28]

The Partition Agreement sets aside to Horacio the 214.164 acres—i.e., Parcel 1—that was conveyed to him in the Leoncio-Horacio Deed.[29] The description of Parcel 1 in the Partition Agreement matches the description of Parcel 1 in the Leoncio-Horacio Deed.[30] The Partition Agreement does not partition Juana's mineral interests.[31] In fact, as Appellants have judicially admitted, Juana "and her heirs and assigns have always been treated as undivided interest owners under the whole [surface], as it was meant and intended to be."[32]

The Partition Agreement divided the surface of the 1,134 acres into nine parcels[33] and split the signatories' mineral interests along the new lines, providing:

> It is strictly understood and herein stipulated that ***this partition agreement is a partition not only of the surface*** to the tracts hereinafter described, ***but*** it is intended by the parties hereto that this partition agreement ***shall partition all of the rights, title and interest of the respective parties to this agreement in and to the tracts*** hereinabove described, together with all improvements thereon situated of every kind, character, and description, ***and*** it is intended that this partition agreement ***shall cover and include all of the***

---

[27] Pl. App. F; *see also* Appellants' Brief, n. 29 (explaining that the Partition Agreement was ultimately signed and filed for recorded in January 1969).

[28] *See* Pl. App. F.

[29] Pl. App. F. at 2-3.

[30] *Compare* App. B (Leoncio-Horacio Deed), *with* Pl. App. F at 3 (Partition Agreement).

[31] *See* Pl. App. F (containing no reference to Juana or her mineral interests).

[32] 10 CR 3493 (Plaintiffs' Ninth Amended Petition at ¶ 112).

[33] Pl. App. F. at 1-14.

1176340

***minerals of every kind, character and description underlying each of the tracts hereinabove described***, and it being intended that *each of the allottees of a parcel or tract of land as hereinabove described shall from henceforth be the owner of all of the minerals* of every kind and character *in and under the respective parcel* and tract of land as allotted and set apart to the respective allottees, ***and from henceforth each allottee shall have the sole and exclusive right, power and authority to execute and deliver oil, gas and mineral leases***, *mining and drilling contracts, and such other development contracts, covering his or her respective parcel as hereinabove described*, ***and all bonus money, delay rentals, royalties or other benefits payable for or under any such lease or leases, or attributable thereto shall be owned by, paid to and belong to the respective allottee of each parcel or tract of land***. . . .[34]

The allotment of the nine parcels resulted in the following division:

| Parcel No. | To Whom Allotted | Acres |
|---|---|---|
| 1 | Horacio B. Salinas | 214.164 acres |
| 2 | Ascencio Salinas | 189.164 acres |
| 3 | Ramiro Salinas | 94.582 acres |
| 4 | Arnaldo Salinas | 94.582 acres |
| 5 | Flavio Salinas | 94.582 acres |
| 6 | Emma Salinas Benavides | 94.582 acres |
| 7 | Hermila Salinas Flores | 94.582 acres |
| 8 | Octavio Salinas | 339.164 acres (includes Octavio's 150 acres) |
| 9 | Adan Salinas | 119.583 acres (includes Adan's 92.699 acres) |

A map of the nine parcels is attached as Appendix C to this Joint Brief.

The nine Salinas Siblings who signed the Partition Agreement cross-conveyed to each other only what they owned in the Subject Property. This is evident in the Partition Agreement itself, which refers to the signatories as the

---

[34] Pl. App. F. at 14-15 (emphasis added).

"exclusive owners" of the partitioned tracts[35] and (as emphasized above) expressly partitioned the "rights . . . and interest of the *respective parties*" to it.[36] The Partition Agreement simply had no impact on the mineral interest of any other party, like Juana and the third parties who owned the 17/32 mineral interest.

D.   For 36 years, nobody questioned the validity of the Partition Agreement and everybody acted consistently with the Partition Agreement's validity.

For 36 years, the Salinas Siblings and their successors acted consistently with the Partition Agreement's validity, taking mortgages, granting leases, and occupying the property as nine divided parcels.[37] In that regard, Appellants "do not want to disturb the current surface ownership of the [S]ubject [P]roperty[,]" as established by the Partition Agreement.[38] And the following conduct relating to the mineral interests is particularly noteworthy, in light of the issues in this appeal:

- In 1971, Ascencio Salinas, predecessor in title to Appellant Romulo Benavides III with respect to Parcel 2, granted an oil-and-gas lease on a portion of his Parcel 2 to Bobby M. Burns, describing the tract as part of "Parcel 2, allotted to Ascencio Salinas (one and the same person as the lessor herein), in that certain Partition Agreement dated December 27, 1968."[39]

---

[35] Pl. App. F at 1.

[36] Pl. App. F at 14-15 (emphasis added).

[37] *See* 8 CR 2543-46 (Defendant Thorp et al.'s Motion for Summary Judgment at 11-14) (detailing the many ways in which the Salinas Siblings and their successors acted consistently with the Partition Agreement's validity, both in regard to the surface estate and the mineral estate); 8 CR 2891, 2394 (Smith Production Inc.'s Motion for Summary Judgment at 2, 5).

[38] 10 CR 3493 (Plaintiffs' Ninth Amended Petition at ¶ 113).

[39] 8 CR 2571 (Instrument 31 in Thorp's Abstract); 8 CR 2652-53 (Lease).

7

- In 1995, Appellants and/or their predecessors granted oil-and-gas leases to Rio Grande Exploration, as follows:

  (1) Appellant Leoncio Salinas (the son of Adan Salinas) leased his interest in Parcel 9, expressly referring to and incorporating the Partition Agreement.[40]

  (2) Appellant Anna Saenz leased her father Horacio's Parcel 1, expressly referring to and incorporating the Partition Agreement.[41]

  (3) Ascencio Salinas, predecessor of Appellant Romulo Benavides III, leased his Parcel 2, expressly referring to and incorporating the Partition Agreement;[42]

  (4) Eustacio Flores, Jr., predecessor of Appellant Luisa Ruiz, leased 16.691 acres out of Parcel 7, incorporating by reference a deed to him from Hermila S. Flores, which referred to and incorporated the Partition Agreement.[43]

  (5) Appellant Hermelinda Benavides leased her mother Emma Benavides' Parcel 6, expressly referring to and incorporating the Partition Agreement.[44]

- In 2002, Appellee Norberto Salinas and Appellants Leoncio Salinas, Romulo Benavides III, Anna Maria Saenz and husband Joel Saenz, Luisa M. Ruiz, and Hermelinda Benavides joined in a Cross-Conveyance and Stipulation of Interest Agreement whereby they cross-conveyed their *divided* interests in Parcels 1, 2, 6, 7, and 9, so as to create the *undivided* interests therein stipulated in those parcels.[45] The instrument expressly refers to the Partition Agreement by its date, volume, and page, and the Parcels' correct acreage amounts in the Partition Agreement.[46]

---

[40] 8 CR 2573 (Instrument 142 in Thorp's Abstract); 8 CR 2680-84 (Lease).

[41] 8 CR 2573 (Instrument 143 in Thorp's Abstract); 8 CR 2685-88 (Lease).

[42] 8 CR 2573 (Instrument 147 in Thorp's Abstract); 8 CR 2689-92 (Lease).

[43] 8 CR 2574 (Instrument 150 in Thorp's Abstract); 8 CR 2693-96 (Lease).

[44] 8 CR 2574 (Instrument 154 in Thorp's Abstract); 8 CR 2697-700 (Lease).

[45] 8 CR 2577 (Instrument 268 in Thorp's Abstract); 8 CR 2750-55 (Cross-Conveyance).

[46] 8 CR 2577 (Instrument 268 in Thorp's Abstract); 8 CR 2750-55 (Cross-Conveyance).

8

- Also in 2002, Appellee Norberto Salinas and Appellants Leoncio Salinas, Romulo Benavides, Anna Maria Saenz and husband Joel Saenz, Luisa M. Ruiz, and Hermelinda Benavides joined in leasing their mineral interests in Parcels 1, 2, 6, 7, and 9 to Samson Lone Star.[47] The instrument expressly refers to the Partition Agreement by its date, volume, and page, and the Parcels' correct acreage amounts in the Partition Agreement.[48]

E.   In 2001, Thorp drilled productive wells on Parcels 5 and 8 and paid royalties on production in accordance with the Partition Agreement that had been in place since 1968.

All of the mineral owners of the Subject Property leased their minerals to Thorp Petroleum Corporation ("Thorp") in 2000.[49] In 2001, Thorp drilled several wells on Parcels 5 and 8 of the Subject Property.[50] Almost all of the oil-and-gas production involved in this suit came from the wells drilled on Parcels 5 and 8.[51] Royalties on production from these wells were paid to the parties who were successors of the original grantees of Parcel 5 (Flavio Salinas) and 8 (Octavio Salinas), and to the successors in interest of Juana Salinas Garcia, whose undivided 1/12 of 15/32 mineral interest was not partitioned in the Partition Agreement.[52]

---

[47] 8 CR 2577 (Instrument 269 in Thorp's Abstract); 8 CR 2756-58 (Lease).

[48] 8 CR 2577 (Instrument 269 in Thorp's Abstract); 8 CR 2756.

[49] 8 CR 2575 (Instruments 200-02 in Thorp's Abstract); 8 CR 2836 (Gill Cheesman Aff. at ¶ 4). El Paso Production Company ("El Paso") later succeeded to Thorp, and Smith Production later succeeded to El Paso.

[50] 8 CR 2836 (Gill Cheesman Aff. at ¶ 6).

[51] *Id.*

[52] *Id.* at ¶ 7.

9

F.     In 2004, the plaintiffs filed suit to try to undo the deal their parents struck.

On April 15, 2004, some of the Salinas Siblings' successors filed this suit to challenge the Partition Agreement's validity, hoping to undo the deal their parents struck so they can share in royalties on oil and gas produced from parcels they do not own.  Later, some of Juana Salinas Garcia's successors joined the suit, hoping to undo a deal that does not even affect them.  This suit has been ongoing for over ten years now.  It is time for the Partition Agreement's validity to be confirmed once and for all.  For the reasons below, Appellees urge this Court to do so.

## SUMMARY OF ARGUMENT

The Partition Agreement went unchallenged for 36 years.  During that time period, every Salinas Sibling who signed the Partition Agreement, as well as their successors, acted as though the Partition Agreement were valid.  Some of them conveyed their interests in the parcels that were allotted to them in the Partition Agreement.  Others invested time and money to construct fences and many other improvements on the parcels that were allotted to them in the Partition Agreement.  In 1995 and 2002, several of them even leased their mineral interests on a *divided* basis and, in doing so, incorporated the Partition Agreement into their leases.

But 36 years after the Salinas Siblings signed the Partition Agreement and agreed to the division of parcels therein, some of their children brought suit to try to undo the deal their parents struck because successful drilling in 2002 revealed that the minerals were not distributed evenly among the parcels.  Instead, the

10

minerals are located primarily in Parcels 5 and 8. Appellants who have no ownership interests in Parcel 5 or 8 want to reestablish the *undivided* mineral interests that existed before the Partition Agreement was signed because the post-agreement developments have made the mineral division more advantageous to other parties. But no new facts about the surface have come to light, and Appellants have no desire to undo the surface division in the Partition Agreement. So now they are in the untenable position of wanting to reject the burdens of the Partition Agreement—divided minerals—and retain its benefits—divided surface.

The Partition Agreement is valid and enforceable because it was signed by all of the property owners it affected. Juana and Leoncio were not affected by it and thus did not have to sign it. In fact, Appellants *admit* there has been no effect on Juana or her heirs and assigns; therefore, even if the Partition Agreement *could* be construed to affect Juana, her heirs and assigns lack standing to challenge it. Leoncio conveyed all of his interests to his brother Horacio *before* the Partition Agreement was signed, and the remaining siblings ratified that conveyance in the Partition Agreement itself and thereby effectuated Leoncio's attempted partition.

Even if the Partition Agreement *were* ineffective for lack of certain signatures, it would nonetheless bind all Appellants, who fall into three categories: (1) successors to the original parties to the Partition Agreement; (2) successors to Juana Garcia Salinas; and (3) successors to Leoncio Salinas by virtue of a

11

quitclaim deed that Leoncio signed in 1991.[53] Anna and Joel Saenz are the only Appellants in category 3, as Anna is the sole grantee in the 1991 quitclaim deed.[54]

Appellants in category 1 cannot deny the binding effect of the Partition Agreement because they are bound by their predecessors' and their own conduct confirming the Partition Agreement's validity, by adverse possession, and by their predecessors' signatures on the Partition Agreement. They are also bound because Texas law does not permit them to accept the benefits of the Partition Agreement—a divided surface—and reject the burdens of the Partition Agreement—divided minerals. Appellants in category 1 include: (a) Anna and Joel Saenz, to the extent they claim through Anna's father, Horacio; (b) Romulo Benavides, III, who claims through his uncle Ascencio and his mother, Emma; (c) Leoncio Salinas, who claims through his father, Adan; (d) Luisa Ruiz, who claims through her mother, Hermila; and (e) Hermelinda Benavides, Thelma Benavides Aguilar, and Irma Benavides Cerda, who claim through their mother, Emma.

Appellants in category 2, which includes all Appellants not listed in the prior paragraph, cannot deny the Partition Agreement's validity because it had no impact on their undivided mineral interest and thus they lack standing to challenge it.

---

[53] 8 CR 2573 (Instrument 117 in Thorp's Abstract).

[54] 8 CR 2573 (Instrument 117 in Thorp's Abstract).

12

Appellants in category 3—Anna and Joel Saenz, to the extent they claim through Anna's uncle Leoncio—cannot deny the Partition Agreement's validity because the Partition Agreement did not impact Leoncio's interest in the Subject Property. Leoncio conveyed all of his interest in the Leoncio-Horacio Deed, *before* the Partition Agreement was signed. Thus, he had no interest to be partitioned by the Partition Agreement and no interest to convey to Anna in 1991. It is perhaps for that reason that Leoncio chose to give a quitclaim deed to Anna, as opposed to giving her a warranty deed like the Leoncio-Horacio Deed.

Finally, in the alternative, even if the Court were to determine there is a fact issue regarding the Partition Agreement, Appellants' claim for damages as to Smith Production should be treated as final because Appellants have not challenged the summary judgment ground that they have no evidence of damages.

## ARGUMENT

A.   The trial court properly granted Appellees' motions for summary judgment on at least four grounds, any one of which will suffice to affirm the trial court's judgment and render judgment for Appellees in this matter.

    1.   The trial court properly granted summary judgment that the Partition Agreement is valid and enforceable because the Partition Agreement was signed by all parties whose interests were affected by it.

Appellants' sole basis for attacking the Partition Agreement's validity is that Juana and Leoncio did not sign it. That argument is wrong for three reasons. First, Texas law does not require a partition agreement to be signed by all parties who have a mineral interest under the partitioned acreage. Second, Juana did not have

13

to sign the Partition Agreement because it had no effect on her mineral interest. Indeed, because it has had no impact on her mineral interest, her heirs and assigns lack standing to challenge it in this suit. Third, Leoncio did not have to sign the Partition Agreement because he conveyed all of his interest in the Subject Property in the Leoncio-Horacio Deed, *before* the Partition Agreement was signed, and the remaining Salinas Siblings signed the Partition Agreement and thereby ratified his conveyance.

   a.   <u>Texas law does not require all parties with a mineral interest in property to join in a partition agreement regarding that property.</u>

A partition agreement does not have to be signed by all parties who have a mineral interest under the partitioned acreage in order to be valid and enforceable. The Supreme Court of Texas addressed this very issue in *Garza v. De Montalvo*.[55]

In *Garza*, ten siblings voluntarily partitioned their interests in land that was covered by an oil-and-gas lease.[56] Their partition agreement did not reference the oil-and-gas lease, "and Sun Oil Company, which then owned the lease, did not join in the partition agreement."[57] At the time the agreement was entered (in 1937), "no wells for oil or gas had been drilled on the leased land."[58] Sun Oil Company began drilling in 1942 and, in 1943, began paying royalties in accordance with the

---

[55] *See Garza v. De Montalvo*, 217 S.W.2d 988, 992 (Tex. 1949).

[56] *Id* at 989.

[57] *Id.* at 990.

[58] *Id.* at 989.

14

partition agreement's segregation of tracts.[59]  This method of royalty payments continued for approximately two years but was challenged in 1945 by parties to the partition agreement who claimed that the partition agreement had no effect on the mineral estate, in part because "a partition of the mineral estate could not take place without the participation of Sun Oil Company, which as assignee of the original lessee owned the working interest in the mineral estate."[60]

The *Garza* court upheld the partition agreement's validity despite the fact that Sun Oil Company—which owned a possessory mineral interest in the partitioned property—did not sign the agreement.[61]  And the court concluded that "[t]hose who joined in the agreement [could] not attack it under these facts."[62]

Just like the *Garza* partition agreement, the Partition Agreement here is valid without the joinder of Juana, who had an undivided 1/12 of the 15/32 interest in the mineral estate.  Likewise, the Partition Agreement's validity is unaffected by the non-joinder of the third parties with an undivided 17/32 of the mineral interest. Appellants seemingly concede at least that much, as they have not challenged the Partition Agreement's validity on the ground it was not signed by the third parties.

---

[59] *Id.* at 990.

[60] *Id.* at 992.

[61] *See id.* at 992.

[62] *Id.*

1176340

Juana should not be treated differently from the third parties. Under the *Garza* opinion, none of them needed to sign the Partition Agreement to make it valid.

          b.      <u>Juana did not need to sign the Partition Agreement because it does not affect her mineral interest in the Subject Property. Indeed, she and her heirs and assigns have always been treated as undivided mineral-interest holders and, for that reason, have no standing to attack the Partition Agreement's validity here.</u>

Juana did not need to sign the Partition Agreement for an additional reason: it simply did not impact her undivided mineral interest in the Subject Property.

Partition agreements are binding contracts and, as such, are "subject to the usual rules of construction to determine their scope and application."[63] Thus, as with any other contract, "the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument" itself.[64] To achieve this objective, the entire contract must be examined and considered "in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless."[65] In other words, all provisions of the written instrument at issue "must be considered with reference to the whole instrument."[66]

Appellants focus on select provisions of the Partition Agreement to conclude that the Partition Agreement "purported to convey all of the mineral interests to the

---

[63] *Id.* at 993; *accord Hamilton v. Hamilton*, 280 S.W.2d 588, 593 (Tex. 1955); *Chandler v. Hartt*, 467 S.W.2d 629, 634 (Tex. Civ. App.—Tyler 1971, writ ref'd n.r.e.).

[64] *J.M. Davidson v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003); *accord Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011).

[65] *J.M. Davidson, Inc.*, 128 S.W.3d at 229 (emphasis added).

[66] *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

16

[Subject Property], which included Juana Salinas' undivided 1/12 of the 15/32 interest in the mineral estate."[67]  Appellants' construction is simply wrong; the parties to the Partition Agreement could not have, and did not attempt to, partition Juana's mineral interest.

Appellants ignore that the Partition Agreement provision addressing the division of mineral interests begins as follows:

> It is strictly understood and herein stipulated that ***this partition agreement is a partition not only of the surface*** to the tracts hereinafter described, ***but*** it is intended by the parties hereto that this partition agreement ***shall partition <u>all of the rights, title and interest of the respective parties to this agreement</u>*** in and to the tracts hereinabove described . . . .[68]

The language above provides critical context for the remainder of the provision relating to mineral interests, making it clear that the Salinas Siblings who signed the Partition Agreement intended to partition only *their* rights and interests.[69]  The fact that they did not include signature lines for Juana or the third parties who owned a 17/32 mineral interest lends further support for the conclusion that they did not intend to disturb those interests when partitioning their own interests.

When addressing Juana's mineral interest, Appellants ask this Court to disregard their judicial admission that Juana "and her heirs and assigns have

---

[67] Appellants' Brief at 17-18.

[68] Pl. App. F at 14.

[69] *See Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 22 (Tex. 2014) ("To determine the parties' intent, we examine the express language of their agreement.").

17

always been treated as undivided interest owners under the whole [surface of the Subject Property], as it was meant and intended to be."[70] In other words, Appellants want this Court to ignore the fact that reality meshes with Appellees' construction of the Partition Agreement. But that fact matters, if for no other reason than that it establishes that the Appellants who are Juana Salinas Garcia's successors lack standing in this suit.

For standing to exist, "a plaintiff must be personally aggrieved; his alleged injury must be concrete and particularized, actual or imminent, not hypothetical."[71] The standing requirement "is implicit in the Texas Constitution's open courts provision, which contemplates access to the courts only for those litigants *suffering an injury*."[72] As this Court has recognized, a plaintiff does not have standing

---

[70] 10 CR 3493 (Plaintiffs' Ninth Amended Petition at ¶ 112); *see also* Appellants' Brief at 18, n.81 ("Defendants may argue that Juana Salinas' mineral interest was not treated as having been partitioned under the partition agreement. . . . That is irrelevant to whether the partition agreement purported to partition her mineral interest. . . . How the partition agreement was later complied with has no bearing on whether the agreement was valid . . . when it was signed.").

[71] *DaimlerChrysler Corp v. Inman*, 252 S.W.3d 299, 304-05 (Tex. 2008); *see also City of San Antonio v. Greater San Antonio Builders Ass'n*, No. 04-12-00745-CV, 2013 WL 2247468, at *3 (Tex. App.—San Antonio May 22, 2013, no pet.) (mem. op.) (providing that "[s]tanding exists when a threat of harm exists such that an injury is likely to occur" but that "'the threat must be 'direct and immediate' rather than conjectural, hypothetical, or remote.'" (quoting *Waco Ind. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 852 (Tex. 2000)).

[72] *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex. 2001) (emphasis added); *see also DaimlerChrysler Corp.*, 252 S.W.3d at 304 ("[T]he Open Courts provision . . . provides court access only to a person for an injury done him." (internal quotation omitted)).

18

unless the plaintiff has "suffered a 'concrete injury[,]' and a 'real controversy' must exist between the parties such that it can be resolved by the court."[73]

By their own admission, those Appellants who are Juana's heirs and assigns have suffered no injury as a result of the Partition Agreement. And regardless of the outcome of this case, they will be treated as they "have always been treated"— "as undivided interest owners under the whole [surface of the Subject Property.]"[74] The Partition Agreement simply has no impact on their mineral interest; thus, that interest will be unaffected by a determination of the Partition Agreement's validity.

      c.    <u>Like Juana, Leoncio did not need to sign the Partition Agreement because he had already conveyed all of his interest in the Subject Property to his brother Horacio.</u>

Leoncio did not need to sign the Partition Agreement because he conveyed all of his interest in the Subject Property through the Leoncio-Horacio Deed, *before* the Partition Agreement was signed. Appellants' contention that the Leoncio-Horacio Deed resulted in a conveyance of only 214 acres of the Subject Property, and thus left Leoncio with an "undivided 1/12 interest in the remaining

---

[73] *In re Estate of Forister*, 421 S.W.3d 175, 177 (Tex. App.—San Antonio 2013, pet. denied) (quoting *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 154 (Tex. 2012)).

[74] 10 CR 3493 (Plaintiffs' Ninth Amended Petition at ¶ 112); *see also* Appellants' Brief at 18, n.81 ("Defendants may argue that Juana Salinas' mineral interest was not treated as having been partitioned under the partition agreement. . . . That is irrelevant to whether the partition agreement purported to partition her mineral interest. . . . How the partition agreement was later complied with has no bearing on whether the agreement was valid . . . when it was signed.").

19

920 acres" therein,[75] ignores language in the Leoncio-Horacio Deed and the impact of its ratification in the Partition Agreement.

When construing a deed, the court's "primary duty is to ascertain the intent of the parties as provided in the four corners of the document."[76] The goal is "to harmonize all of the parts and construe the instrument to give effect to all of its provisions."[77] Thus, intent must be determined "from the whole document, 'not by the presence or absence of a certain provision[,]'"[78] and "the language of the deed should be interpreted so that no provision is rendered meaningless."[79] The terms within the deed "are given their plain, ordinary, and generally accepted meanings unless the deed itself shows them to be used in a technical or different sense."[80]

The Leoncio-Horacio Deed provides that, for "good and valuable considerations," Leoncio granted, sold, and conveyed "[a]ll that certain tract set aside, or to be set aside, to Grantor, under Agreement heretofore entered into by and between Grantor and Grantee and their brothers and sisters[,]" describes that tract as "Parcel No. 1, containing 214.164 acres of land," describes Parcel 1 in

---

[75] Appellants' Brief at 18; *see also* 10 CR 3493 (Plaintiffs' Ninth Amended Petition at ¶ 113).

[76] *Hausser v. Cuellar*, 345 S.W.3d 462, 466 (Tex. App.—San Antonio 2011, pet. denied).

[77] *Graham v. Prochaska*, 429 S.W.3d 650, 655 (Tex. App.—San Antonio 2013, pet. filed).

[78] *Id.* (quoting *Concord Oil Co. v. Pennzoil Exploration & Prod. Co.*, 966 S.W.2d 451, 457 (Tex. 1998)).

[79] *Hausser*, 345 S.W.3d at 466; *accord Lickel v. White*, 819 S.W.2d 459, 462 (Tex. 1991).

[80] *Graham*, 429 S.W.3d at 655 (citing *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)).

1176340

metes and bounds, and then provides that the conveyance includes the acres, "together with all and singular the rights and appurtenances thereto in anywise belonging unto[.]"[81] Importantly, the metes-and-bounds description refers to Parcel 1 in relation to Parcels 2 and 3 and describes all three parcels as part "**of this Partition**".[82] The phrase "of this Partition" appears five times in the document.[83]

After reading all provisions of the Leoncio-Horacio Deed together, it is clear that Leoncio intended to convey to Horacio *all* of his interest in the Subject Property and intended his conveyance to be reflected in the Partition Agreement.[84] Under Texas law, Leoncio was entitled to convey all of his interest to Horacio before the Partition Agreement was executed, just as Juana was entitled to convey her surface interest to Octavio before the Partition Agreement was executed.[85]

---

[81] 7 CR 2326 (App. B).

[82] 7 CR 2326 (App. B) (emphasis added).

[83] 7 CR 2326 (App. B).

[84] *See Hamilton*, 280 S.W.2d at 593 (providing that warranty deeds, like the Leoncio-Horacio Deed, are "the common and accepted way of partitioning lands voluntarily" in Texas).

[85] *See, e.g.*, *Wilderness Cove, Ltd. v. Cold Spring Granite Co.*, 62 S.W.3d 844, 850 (Tex. App.—Austin 2001, no pet.) ("A deed by one cotenant, without the consent or participation of other cotenants, may only convey such interest as the maker of the deed possesses. *Thomas v. Sw. Settlement & Development Co.*, 123 S.W.2d 290, 297 (Tex. 1939). However, the law does not require a cotenant to partition the property *prior* to a conveyance; the nonparticipating cotenants simply retain their interest until such time as they convey it or seek partition. *See id.*").

1176340

The Salinas Siblings who signed the Partition Agreement awarded to Horacio the precise Parcel 1 that was described in the Leoncio-Horacio Deed.[86] In doing so, they ratified the Leoncio-Horacio Deed as a partition deed.

Under the longstanding equitable-partition doctrine, a deed by one cotenant (like Leoncio) to part of the common property (like the Subject Property) will be given effect if it does not prejudice the rights of the other cotenants.[87] The rights of other cotenants were not prejudiced here. As explained above, Juana was not affected by Partition Agreement.[88] It follows naturally that Juana was also unaffected by the Leoncio-Horacio conveyance that was carried over to the Partition Agreement. The remaining cotenants who did not join in the Leoncio-Horacio Deed ratified the deed in the Partition Agreement that they *did* join, by awarding to Horacio the same Parcel 1 that was conveyed to him in the Leoncio-

---

[86] Pl. App. F at 1-2 (Partition Agreement).

[87] *See, e.g.*, *Thomas v. Sw. Settlement & Development Co.*, 123 S.W.2d 290, 295-99 (Tex. 1939) (discussing equitable-partition doctrine at length and summarizing cases addressing same); *Lasater v. Ramirez*, 212 S.W. 935, 936 (Tex. 1919) ("It is well settled in this state that a deed from one tenant in common to a specific part of the common property will be recognized, and the purchaser thereof protected, by setting apart to him the specific part so conveyed, if this can be done without prejudice to the other owners."); *Larrison v. Walker*, 149 S.W.2d 172, 177 (Tex. App.—Texarkana 1941, pet. ref'd) ("The deeds of a tenant in common to specific parcels of land are not absolutely void. They are always good as against the grantor. Such deeds do not convey or destroy any of the title of the nonjoining cotenants to their undivided interest to the lands described in the deeds. The nonjoining cotenants may avoid such deeds, *if and to the extent only they are injured by such deeds*.").

[88] *See supra* pp. 17-20.

22

Horacio Deed. In doing so, the remaining cotentants accomplished equity among themselves, consistent with principles underlying the equitable-partition doctrine.[89]

Appellants minimize the equitable-partition doctrine by saying that "an equitable partition only becomes effective when it is entered by a court as part of a partition decree."[90] Appellants miss the point: this Court, in equity, should not disturb the equity that the parties intended to effectuate in the Partition Agreement.

> d. Appellants cite no authority that actually supports their claim that the Partition Agreement is invalid without Juana's and Leoncio's signatures.

As support for their claim that the Partition Agreement is invalid without Juana's and Leoncio's signatures, Appellants rely solely on two cases—*Stradt v. First United Methodist Church of Huntington*, 573 S.W.2d 186 (Tex. 1978), and *Thomas v. Southwestern Settlement and Development Company*, 123 S.W.2d 290 (Tex. 1939).[91] Neither *Stradt* nor *Thomas* is factually analogous to this case, and neither case supports an argument that parties who are unaffected by a partition agreement must nonetheless sign the partition agreement in order to make it valid.

---

[89] *See, e.g.*, *Thomas*, 123 S.W.2d at 296 ("[T]he doctrine [of equitable partition] is an equitable doctrine, which concerns itself primarily in protecting the vendee in the part of the land conveyed to him, when and to the extent that this can be done without prejudice to the cotentants of the whole tract, and which in the attainment of such primary object undertakes fairly to adjust the equities of all of the interested parties.").

[90] Appellants' Brief at 15, n.69.

[91] *See* Appellants' Brief at 14-19.

23

In *Stradt*, the plaintiff brought suit for a partition of her interest in 177 acres of land that her father deeded to the First United Methodist Church of Huntington without the joinder of his daughter (the plaintiff) or his son.[92] The 177 acres were part of a tract that had been the community property of the father and the children's mother.[93] When the mother died intestate, the father received a one-half divided interest, and the children both received a one-fourth undivided interest."[94]

The Church filed a trespass-to-try-title cross action and "tried the case on a theory of parol partition[.]"[95] The Church argued that the father's conveyance of a separate 1,600 acres to his children in 1946 "was in full settlement of their interest in their mother's estate" and that, as a result, they did not have any interest in the 177-acre tract when the father conveyed it to the Church in 1949.[96] The trial court allowed the submission of two special issues on the question of parol partition, and the question on appeal was whether there was any evidence to support the submission of or the answers to the special issues.[97] The Supreme Court of Texas held there was no evidence of a parol partition, reasoning in part that there was no evidence that the plaintiff-daughter or the son consented to any partition and that

---

[92] *Stradt*, 573 S.W.2d at 188.

[93] *Id.*

[94] *Id.*

[95] *Id.*

[96] *Id.*

[97] *Id.* at 189.

1176340

"[a] voluntary partition of land must be based on the agreement of all parties with a possessory interest thereto and cannot be the result of a unilateral decision."[98]

Unlike the parol partition alleged in *Stradt*, the Partition Agreement here did not divest any non-joining parties of their interests. It did not divest Juana of her mineral interest, did not divest the third parties of their 17/32 mineral interest, and could not divest Leoncio of any interest because he had already conveyed all of his interests in the Leoncio-Horacio Deed. The Partition Agreement merely divided the possessory interests of its signatories, and thus it does not run afoul of *Stradt*.

In *Thomas*, the plaintiffs—record owners of a 3/35 interest in the land at issue—claimed that their cotenant, the Houston Oil Company of Texas, had "brought about a partition by making a sale of a specific portion of the common estate, which portion was of a value in excess of the value of its pro rata share of the estate."[99] The *Thomas* plaintiffs claimed that the conveyance and partition bound Houston Oil Company of Texas, and they "invoke[d] the doctrine of equitable partition as in effect giving them title to that portion of the common estate that was not conveyed by Houston Oil Company of Texas."[100]

After analyzing cases relating to partitions, the *Thomas* court held that "the action of one cotenant in conveying a specific parcel of the commonly owned land

---

[98] *Id.* at 190.

[99] *Thomas*, 123 S.W.2d at 292, 294.

[100] *Id.* at 294-95.

1176340

does not divest the nonjoining content of his interest in the parcel conveyed and is not an effective partition when made, but it will become effective when the court, after finding that it can be equitably done, sets apart such tract to the vendee."[101] And for reasons inapplicable to this case, the *Thomas* court held that "the equities of the case . . . [did] not . . . justify the application of the equitable rule invoked."[102]

Appellants cherry-picked from *Thomas* a portion of the court's synopsis of a rule from a different case—*Joyner v. Christian*, 113 S.W.2d 1229 (Tex. 1938). The full synopsis is that "a partition attempted to be made without joinder of all of the cotenants is ineffective when made *but will become binding when ratified by those who did not participate in it*."[103] In fact, a full reading of *Joyner*, coupled with other cases, makes clear that, even if the Partition Agreement were ineffective for lack of Juana's or Leoncio's signature (which it is not), the Partition Agreement would nonetheless be binding on all Appellants, for a number of different reasons.

2. <u>Even if the Partition Agreement were ineffective due to the lack of Juana's and Leoncio's signatures, summary judgment is proper because Appellants accepted benefits of the Partition Agreement, ratified it, acquiesced in it, and are estopped to deny its validity now.</u>

Appellants have made it abundantly clear that they "do not want to disturb the current surface ownership of the [S]ubject [P]roperty." [104] In fact, they "are

---

[101] *Id.* at 299; *see also id.* at 296-99 (analyzing Texas cases relating to partition).

[102] *Id.* at 295.

[103] *Id.* at 299 (emphasis added to identify text omitted from Appellants' Brief).

[104] 10 CR 3493 (Plaintiffs' Ninth Amended Petition at ¶ 113).

willing to stipulate and agree that, even if the [Partition Agreement] . . . is held to be invalid or unenforceable, they will enter into and sign any necessary agreements to vest title to the surface into the current alleged owners of the surface."[105]

In seeking to uphold the surface division in the Partition Agreement on the one hand, and seeking to undo the mineral division in the Partition Agreement on the other hand, Appellants are seeking an outcome that equity does not permit.

> The essence of a partition is that it gives the parties full ownership of something, instead of a prior undivided ownership, and gives it in exchange for surrender of an undivided interest in something else. *Equitably speaking, one can no more accept the benefits of a partition while rejecting its burdens than he or she can do so with regard to any contract, deed, or will.*[106]

For this reason alone, this Court should enforce the Partition Agreement even if it determines that the Partition Agreement is otherwise unenforceable for lack of certain signatures.

Moreover, even if Appellants *could* accept the portions of the Partition Agreement they like and reject the rest (which they clearly cannot do), they still cannot escape the legal effect of the many actions they and their predecessors have taken consistent with the Partition Agreement's validity. As Appellants acknowledge, a party is "equitably prohibited from challenging [a] partition under ratification, estoppel, or acquiescence" if "the party challenging the partition acted

---

[105] *Id.*

[106] *Wright v. Wright*, 274 S.W.2d 670, 675 (1955) (emphasis added).

27

as if the partition were valid."[107]  Appellants and their predecessors, many of whom were parties to the Partition Agreement, have certainly acted as if it were valid.

In *Joyner*, the Supreme Court of Texas applied ratification, acquiescence, and estoppel to enforce an invalid partition agreement against parties who had joined in it and acted as though the partition agreement were valid.[108]  In that case, Scurry Christian and his siblings partitioned land by agreement without the joinder of parties (the plaintiffs) who owned a 1/6 interest in a subset of the property that was partitioned.[109]  The Supreme Court of Texas held that, even though the "agreed partition was void because of nonjoinder of [parties who owned part of the partitioned property] . . . Scurry and the other defendants holding under him [were] *estopped* to deny its binding effect as against them."[110]  The court continued:

> [T]he . . . allottees *ratified* as between themselves their voluntary action in making the partition, by each taking possession of the tract set apart to him and making improvements thereon, and by executing ratification deeds to each other respectively, and by severally executing numerous oil and gas leases, royalty deeds, and other conveyances, to third persons.  The partition and the respective deeds of confirmation executed by the allottees to each other are void.  The action of the allottees, upon being *acquiesced in* by the nonjoining cotenants, is given the effect, *upon the principle of estoppel*, of segregating the common lands into separate tracts. This principle

---

[107] Appellants' Brief at 29-30.

[108] *Joyner*, 113 S.W.2d at 1232-33.  Of note, the *Joyner* court treated estoppel, ratification, and acquiescence as related concepts and did not define specific elements for any of them.  *See id.*

[109] *Joyner*, 113 S.W.2d at 1230-31.

[110] *Id.* at 1232 (emphasis added).

1176340

denies the allottees, including Scurry and those holding under him, the right to question the binding force of the segregation.[111]

For 36 years, the Salinas Siblings and their successors acted consistently with the Partition Agreement's validity, taking mortgages, granting leases, and occupying the property as nine divided parcels.[112]  Appellants tacitly admit the actions reflecting that the partition of the *surface* estate was valid, as the section of their Brief regarding ratification, acquiescence, and estoppel focuses solely on whether Appellants have acted as if the partition of the *mineral* estate was valid.[113] Their focus is understandable, given that they "do not want to disturb the current surface ownership of the [S]ubject [P]roperty[.]"[114]  But again, they cannot ratify the Partition Agreement's division of the surface estate and reject its division of the mineral estate.  They simply cannot have it both ways.

Although Appellants suggest they never acted as if the partition of the mineral estate was valid, the record proves otherwise.  Here are some examples.

- First, as addressed further in Section A(4) below, all nine of the Salinas Siblings who signed the Partition Agreement condoned the division of the mineral estate therein, and that action binds all Appellants who claim through them.

---

[111] *Id.* (emphasis added); *see also High v. Tarver*, 25 S.W. 1098, 1100 (Tex. Civ. App. 1894) ("[T]hat the [partition] agreement was not signed by two of the defendants is, we think, immaterial, as those two defendants insistent upon the enforcement of the agreement . . . .").

[112] *See* 8 CR 2543-46 (Thorp et al.'s Motion for Summary Judgment at 11-14) (detailing the many ways in which the Salinas Siblings and their successors acted consistently with the Partition Agreement's validity, both in regard to the surface estate and the mineral estate).

[113] *See* Appellants' Brief at 29-31.

[114] 10 CR 3493 (Plaintiffs' Ninth Amended Petition at ¶ 113).

1176340

- Second, even though Leoncio (of the Salinas Siblings) did not sign the Partition Agreement, he nonetheless acquiesced in its divisions by (a) acknowledging the partitioning in the Leoncio-Horacio Deed and (b) not making a claim to any surface or mineral interests in the Subject Property after executing the Leoncio-Horacio Deed.[115] Leoncio's heirs also are not challenging the Partition Agreement in this case. Appellants Anna and Joel Saenz are claiming interests through Leoncio as a result of his quitclaim deed to Anna in 1991, but that deed (like all quitclaim deeds) contains no warranty or covenant for the right, title, or interest that it purports to pass.[116] By the deed, Leoncio passed only what he owned in the Subject Property.[117] Owning nothing, he passed nothing to Anna.[118] Moreover, Anna and Joel Saenz are bound by Leoncio's acquiescence in the Partition Agreement beginning back in 1968.

- Third, all Appellants who referred to and/or incorporated the Partition Agreement into their oil-and-gas leases in 1971, 1995, and 2002, either directly or through their predecessors, acted as if the partition was valid.[119]

- Fourth, Appellants Leoncio Salinas, Romulo Benavides III, Anna Maria Saenz and husband Joel Saenz, Luisa M. Ruiz, and Hermelinda Benavides recognized the validity of the division of the mineral estate when they joined in a Cross-Conveyance and Stipulation of Interest Agreement whereby they cross-conveyed their *divided* interests in Parcels 1, 2, 6, 7, and 9, so as to create the *undivided* interests therein stipulated in those Parcels.[120]

Appellants attempt to overcome all of the evidence establishing their acceptance of the validity of the partition of the mineral estate by focusing on the

---

[115] 7 CR 2362 (App. A at ¶ 11).

[116] *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 769 (Tex. 1994).

[117] *See id.*

[118] *See id.*

[119] Refer to Section D of the Statement of Facts for a description of these leases.

[120] 8 CR 2577 (Instrument 268 in Thorp's Abstract); 8 CR 2750-55 (Cross-Conveyance).

30

fact that two of the 24 Appellants—Anna and Joel Saenz—claimed in affidavits that, before 2002, unidentified companies (that are not parties in this appeal) paid Anna and Joel Saenz "bonus money and royalties consistent with [their] ownership of an undivided interest in the mineral estate of the entire property."[121] What nonparty oil companies may have done has no bearing on whether *Appellants* acted in a manner consistent with the validity of the partition of the mineral estate.[122]

Appellants have not identified a pre-suit action *by them or their predecessors* that is inconsistent with the validity of the partition of the mineral interests in the Partition Agreement, and they have neither rebutted nor overcome the evidence of their ratification of and acquiescence in the Partition Agreement. Appellants acquiesced in the divisions in the Partition Agreement for 36 years, and they should be estopped from denying the Partition Agreement's binding effect on them now.[123] Summary judgment is proper on the all of the affirmative defenses addressed above; therefore, it should be affirmed on appeal.

---

[121] Appellants' Brief at 30 (citing 9 CR 2931 and 9 CR 2935).

[122] Thorp et al. objected to the statements at issue on the grounds that (1) the statements are irrelevant and (2) neither Anna nor Joel is "qualified to speak on the legal issues of mineral ownership or interpretation of deeds and other instruments." 9 CR 3277-79. The trial court overruled the objections to Anna's statement and sustained the objections to Joel's statement. 9 CR 3307, 3309-10.

[123] *See, e.g.*, *Joyner*, 113 S.W.2d at 1232-33; *De Rodriguez v. Hinnant*, 267 S.W. 471, 473 (Tex. 1925) ("Although the plaintiffs in error were under disability at the time of the partition, and were represented by one without authority [in joining the partition], yet, having accepted the portion of the estate set aside to them, which was fair and equitable at the time, and having acquiesced in the division for forty years, they must be held to have ratified the partition . . . .");

1176340

3. **Summary judgment is also proper because Appellants' claims are barred by adverse possession.**

The trial court's summary judgment can also be affirmed on the affirmative defense of adverse possession, which Appellees' summary judgment evidence establishes as a matter of law. From the time the Partition Agreement was signed in 1968 until this suit was filed in 2004, each of the Salinas Siblings receiving a parcel under the Partition Agreement (and/or their successors) have maintained actual and visible possession of the allotted parcel under a claim of right that is inconsistent with and hostile to the claim of any other person.[124] Appellants attempt to upset that long-settled title, arguing that adverse possession does not apply because: (i) minerals were severed from the surface, (ii) the elements of adverse possession have not been met, and (iii) Appellant Anna Saenz consented to the possession. As discussed below, all of Appellants' justifications fail.

a. **The portion of the minerals that remain unsevered from the surface were adversely possessed along with the surface.**

Appellants assert that, because part of the minerals underlying the Subject Property were severed, the remaining *unsevered* minerals could not be adversely possessed by occupation of the surface and, instead, could only be adversely possessed by drilling and production. That is not the law in Texas.

---

*Robinson v. O'Connor*, 181 S.W.2d 935, 938 (Tex. Civ. App.—El Paso 1944, writ ref'd w.o.m.) (holding that, "by long acquiescence," parties ratified a deed an attempted partition preceding it).

[124] *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.021(1) (West 2002).

The general rule that possession of the surface will not perfect title to severed minerals relies on the theory that possession of the surface estate is not a repudiation of the owner of the mineral estate.[125] But that theory does not apply to any portion of the minerals that has *not* been severed from the surface.

When, as here, a portion (11/12 of 15/32) of minerals remains unsevered from the surface estate, adverse possession of the surface perfects title to the unsevered minerals.[126] For example, in *Dixon v. Henderson*, the court held that a cotenant perfected title to the surface *and* to the minerals that remained unsevered under the tract under the ten-year statute of limitation, without any drilling or production.[127]

In this case, a subset of the minerals was severed from the surface of the Subject Property—the 17/32 interest assigned to third parties in 1932 and 1940, and the 1/12 of 15/32 interest retained by Juana when she deeded her surface interest to her brother Octavio. But the remaining mineral estate underlying the Subject Property—11/12 of 15/32—was not severed and continued to be owned in common with the surface estate. Thus, as in *Dixon*, if the Partition Agreement

---

[125] *See Elliott v. Nelson*, 251 S.W. 501, 504 (Tex. 1923) ("[N]o delay in working or mining the minerals . . . can be construed into a repudiation[ ] by the owner of the other estate, of the estate in the minerals reserved . . . .").

[126] *See, e.g.*, *Dixon v. Henderson*, 267 S.W.2d 869, 873 (Tex. App.—Texarkana 1954, no writ); *Birdwell v. Am. Bonding Co.*, 337 S.W.2d 120, 130-31 (Tex. App.—Fort Worth 1960, writ ref'd n.r.e.) ("[A]dverse possession of the surface extends to and includes an adverse possession of the mineral interest thereunder which had never been separated or severed from the surface estate . . . .").

[127] *Dixon*, 267 S.W.2d at 873 (citing *Thomas*, 123 S.W.2d at 291, 300).

1176340

were not binding here, then the unsevered portion of the minerals would be subject to adverse possession of the surface without the need for drilling and production.

> **b.** <u>The summary judgment evidence established all of the elements of adverse possession, and Appellants presented no evidence to the contrary.</u>

Appellants contend that the only summary judgment evidence in support of adverse possession is the affidavit of Fausto Salinas, which they claim is conclusory. Appellants disregard the supporting statements in Fausto's affidavit and in his deposition testimony, which was also included in the summary judgment record. Appellants also ignore interrogatory answers that are part of the record here. A full review of the record shows that adverse possession was established as a matter of law, with no controverting evidence presented by Appellants.

Adverse possession requires proof of "(1) actual possession of the disputed property; (2) under a claim of right; (3) that was adverse or hostile to the claim of another person and that it was consistently and continuously so for the duration of the statutory period."[128] In addition, "a co-tenant may not adversely possess against another co-tenant unless it clearly appears he has repudiated the title of his

---

[128] *Villareal v. Guerra*, 446 S.W.3d 404, 410 (Tex. App.—San Antonio 2014, pet. denied).

1176340

co-tenant and is holding adversely to it[.]"[129]   Adverse possession may be established as a matter of law when, as here, the pertinent facts are undisputed.[130]

In this case, the Partition Agreement, coupled with the conduct following its execution, constitutes sufficient repudiation by each possessory cotenant of the non-possessory cotenants' interests.   In *Republic Production Co. v. Lee*, for example, the court held that an attempted partition that lacked a cotenant, when followed by adverse possession, constituted a repudiation of the cotenancy:

> It is a rule of wide application that if two or more tenants in common of a tract of land enter into a partition of same, and set apart the whole to the exclusion of a non-participating cotenant, such act of partition, when followed by adverse possession, even if wholly void as against the excluded cotenant, constitutes a complete and unequivocal repudiation of the cotenancy relationship. It is also well settled that such a partition, even though there be no sufficient record thereof as will give notice to the excluded cotenant, may be proven as an act manifesting an intention on the part of the participating cotenant to oust the other cotenant or repudiate the tenancy relationship with him.[131]

---

[129] *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 756 (Tex. 2003).

[130] *Id.* at 756 (upholding a summary judgment finding adverse possession among cotenants); *Glover v. Union Pac. R.R. Co.*, 187 S.W.3d 201, 213-16 (Tex. App.—Texarkana 2006, pet. denied) (same).

[131] *Republic Production Co. v. Lee*, 121 S.W.2d 973, 262 (Tex. 1938); *see also Beets v. Hickok*, 701 S.W.2d 281, 284 (Tex. App.—Tyler 1985, no writ) (partition setting aside the full fee to 24 acres out 87.5-acre cotenancy satisfied element of repudiation: "Record of a conveyance by several cotenants to another cotenant purporting to convey the entire common property, when followed by possession, constitutes notice of repudiation and amounts to disseizin of the nonparticipating cotenant.").

Here, the Partition Agreement's execution, followed by each Salinas Sibling taking immediate possession of the Parcel allotted to him or her in the agreement, repudiated the cotenancy relationship and started the clock on adverse possession.

Appellants quote select portions of Fausto's affidavit to claim that the other elements of adverse possession have not been met. A complete review of the record establishes each element of adverse possession.

Fausto's affidavit provides that that the Salinas Sibling took immediate possession of and "began to construct improvements, fences, wells, and buildings on their respective parcels."[132] The affidavit also provides that Horacio immediately sold Parcel 1 to a third party but reserved his mineral rights therein.[133]

Important to the oil-and-gas production obtained from Parcels 5 and 8, Fausto's affidavit provides additional detail about the actions of Fausto's father, Octavio, to stake his exclusive claim to Parcel 8, and the actions of Fausto's uncle, Flavio, to stake his exclusive claim to Parcel 5.[134] They constructed fences and other improvements, and Fausto and his father have been cultivating, using, and enjoying Parcel 8 since the Partition Agreement was signed in 1968.[135]

---

[132] 7 CR 2362 (App. A at ¶ 12).

[133] 8 CR 2571 (Instruments 29 in Thorp's Abstract); 8 CR 2647-51 (Deed).

[134] 7 CR 2362 (App. A at ¶¶ 14-15).

[135] *Id.* at ¶ 14.

36

In Fausto's deposition, which is part of the summary judgment record, Fausto gave testimony that is consistent with his affidavit and provides further detail about adverse possession. He explained that, after the Partition Agreement was executed, a dozer was brought in to clear senderos dividing each of the partitioned blocks.[136] Fences were then erected in the senderos along the survey line of each parcel, as divided by the Partition Agreement.[137] Fausto also testified that, from the time the Partition Agreement was signed in 1968 until this lawsuit was filed in 2004, title to each parcel was held continuously and peaceably—that no one ever challenged or questioned the siblings' or their successors' individual title in the allotted parcels claimed under the Partition Agreement.[138] Fausto's deposition testimony was uncontroverted and establishes adverse possession as a matter of law under the ten-year adverse possession statute.[139]

In addition to Fausto's affidavit and deposition testimony, Appellants' own interrogatory responses below provide evidence of adverse possession. In response to Interrogatory 7, which asked Appellants whether they occupied any portion of the Subject Property and asked them to describe any such occupation, they wrote:

---

[136] *See, e.g.*, 7 CR 2363-87, at 36:7-13 (going so far as to identify the foreman and dozer driver who cut the senderos, Lee Walker and Felix Flores). Fausto further identified which of the siblings drilled water wells on their allotted parcels. *Id.* at 36:18-37:2.

[137] *Id.* at 39:22-40:6.

[138] *Id.* at 40:7-15.

[139] Tex. Civ. Prac. & Rem. Code Ann. § 16.026(a) (West 2002).

1176340

Leoncio [son of Adan Salinas], Romulo [nephew of Ascencio Salinas], and Hermelinda [daughter of Emma Salinas] own and occupy a portion of the surface. Leoncio and his family have put an extensive amount of time and hard work . . . into this property . . . . There have been new fences, lines, sheds, corrals, water improvements and other projects on the property. Leoncio has been living on the property since his father passed away in 1998. Romulo's surface has a house, corrals, fencing, and water wells. Hermelinda's surface has fencing and water well improvements. Surface uses are residential, agricultural, hunting, livestock and recreational.[140]

And in response to Interrogatory 8, which asked whether Appellants' predecessors ever occupied any portion of the Subject Property, Appellants wrote: "yes, some predecessors in interest of the Plaintiffs [Appellants] occupied the property dating all the way back to Juan and Ines Salinas."[141]

Tellingly, although Appellants challenge the sufficiency of the evidence, they offer no rebutting evidence. Indeed, they have asserted repeatedly that they are not trying to disturb the long-recognized division of the surface.[142] But that surface use is exactly what establishes adverse possession in the event the Partition Agreement did not bind all of the contested interests in the Subject Property.

c.  Even if Ana Saenz "consented" to the use of the surface by the siblings and their successors, her consent could not have been granted until after the 10-year statute of limitations had expired.

Appellants contend that the trial court improperly excluded the affidavit of Appellant Anna Saenz and her claim that she consented to the use of the divided

---

[140] 8 CR 2778.

[141] 8 CR 2779.

[142] Appellants' Brief at 8.

parcels by her parents' siblings. But that claim is contradicted by Anna's own deposition testimony that nobody asked for *her* consent to go onto *their* land.[143] She even admitted that she did not own any interest in the surface of the Subject Property and that people with surface ownership, such as Fausto Salinas (Octavio Salinas's son), did not need to share the benefits resulting from their ownership.[144]

Anna did not obtain any potential interest in any portion of the Subject Property until 1989, when her father Horacio died intestate and she inherited his interest in Parcel 1 of the Subject Property.[145] Accordingly, any "consent" that Anna gave before 1989 would have been useless. Indeed, in both of the consent cases that Appellants cite, the permission to use the property that barred adverse possession came from a party claiming record title, not a third party.[146] Thus, during the time period that is relevant here, Anna's "consent" had no effect.

Anna obtained her alleged interest in the Subject Property 21 years after the Partition Agreement was signed—i.e., approximately 11 years after the 10-year statute of limitations had expired and the Salinas Siblings and their successors had

---

[143] 8 CR 2799.

[144] 8 CR 2800-02.

[145] 8 CR 2553, 2792.

[146] *See Villareal v. Chesapeake Zapata, L.P.*, No. 04-08-00171-CV, 2009 WL 1956387, at *3-4 (Tex. App.—San Antonio July 8, 2009, pet. denied) (mem. op.) ("[M]y father gave them permission to cross his tract of land."); *Commander v. Winkler*, 67 S.W.3d 265, 269-70 (Tex. App.—Tyler 2001, pet. denied).

39

perfected title by adverse possession.[147]  Therefore, even if the trial court had considered Anna's affidavit relating to her consent, it would provide no evidence to support Appellants' counter-defense of permissive use in this case.

4.    <u>At a minimum, summary judgment is proper as against the parties who joined in the Partition Agreement, as well as their successors.</u>

A longstanding rule in Texas is that parties who join in a partition agreement are bound by the agreement, even if the agreement is determined to be void due to the non-joinder of cotenants in the partitioned property.  For example, in *Joyner*, the plaintiffs, who were cotenants of partitioned property, sued Scurry Christian, claiming they were left out of a partition agreement between Scurry and his siblings.[148]  The Supreme Court of Texas held that, even though the agreement was void due to non-joinder of the cotenants, "Scurry and the other defendants holding under him [were] estopped to deny its binding effect as against them."[149]  The court reinforced and clarified that rule in *Republic Production Co. v. Lee*, holding: "Even if the instruments of conveyance [in the partition proceeding at issue] were void, the partition was nonetheless valid as to those who participated therein."[150]

---

[147] Tex. Civ. Prac. & Rem. Code § 16.026(a).

[148] *Joyner*, 131 S.W.3d 2d at 1230-31.

[149] *Id.* at 1232.

[150] *Republic Production Co.*, 121 S.W.2d at 979.

40

In accordance with the longstanding rule, all of the Salinas Siblings who joined in the Partition Agreement are bound by it. Likewise, their successors cannot undo the deal that the Salinas Siblings struck in the Partition Agreement.

Thus, at a minimum, summary judgment is proper against (a) Anna and Joel Saenz, to the extent they claim through Anna's father, Horacio; (b) Romulo Benavides, III, who claims through his uncle Ascencio and his mother, Emma; (c) Leoncio Salinas, who claims through his father, Adan; (d) Luisa Ruiz, who claims through her mother, Hermila; and (e) Hermelinda Benavides, Thelma Benavides Aguilar, and Irma Benavides Cerda, who claim through their mother, Emma.

B.  Even if there were a fact question relating to the Partition Agreement, Appellants' claim for damages in their trespass-to-try title action should be treated as final because Appellants have not challenged or briefed the summary judgment ground that they have no evidence of such damages.

In the underlying trespass-to-try-title action, Appellants (as plaintiffs) sought both "an order quieting title to the disputed property and damages to compensate them for all [alleged] unlawful conduct of defendants, including all actual, special, consequential, and incidental damages."[151] Smith Production moved for summary judgment on multiple grounds, including that "Plaintiffs have no evidence . . . of

---

[151] 10 CR 3495-96 (Plaintiffs' Ninth Amended Petition at ¶ 116(e). Plaintiffs in trespass-to-try-title actions are entitled to seek damages and to recover them if they prove entitlement to them. *See, e.g.*, Tex. Prop. Code Ann. §§ 22.021(d), 22.022 (West 2014); Tex. R. Civ. P. 783(f), 805.

any damages."[152]    The trial court granted all Appellees' summary judgment motions without specifying the grounds on which it was ruling.[153]    The trial court then entered a final judgment and ordered that the "Partition Agreement . . . is hereby declared to be valid and enforceable for all purposes as to all parties to this suit" and that "Plaintiffs take nothing by their suit against all Defendants."[154]

"When, as in the present case, a movant asserts multiple grounds for summary judgment, and the trial court does not specify in the order the ground on which summary judgment was granted, the nonmovant must negate all grounds on appeal." [155]  Appellants have acknowledged this requirement in their own Brief.[156]

Appellants have not challenged or briefed Smith Production's summary judgment ground that Appellants lack evidence of the damages sought in their trespass-to-try-title action.    Thus, they cannot complain about those damages on appeal, and the trial court's judgment on those damages should be affirmed even if this Court determines there is a fact issue relating to the Partition Agreement.[157]

---

[152] 8 CR 2843 (Smith Production's Motion for Summary Judgment at 6).

[153] Appellants' Brief at 13 (citing Pl. App. C-E).

[154] Pl. App. A at 4, ¶¶ 1, 3.

[155] *Ward v. Ward*, No. 04-12-00703-CV, 2014 WL 470153, at *2 (Tex. App.—San Antonio Feb. 5, 2014, pet. filed) (mem. op.).

[156] Appellants' Brief at 13 (citing *Potter v. Kaufman & Broad Home Sys. of Tex., Inc.*, 137 S.W.3d 701, 706 (Tex. App.—San Antonio 2004, no pet.), for same proposition).

[157] *See, e.g.*, *Ward*, 2014 WL 470153, at *2 ("If the nonmovant fails to challenge all grounds on which the judgment may have been granted, the appellate court must uphold the summary judgment."); *López v. Montemayor*, 131 S.W.3d 54, 61 (Tex. App.—San Antonio 2003, pet. denied) (declining to consider issue that was not raised in appellant's original brief).

42

## CONCLUSION AND PRAYER

For all of the reasons above, this Court should not accept Appellants' invitation to undo the deal that the Salinas Siblings struck over 46 years ago. The Partition Agreement was signed by all of the parties who were affected. The only reason Appellants want to undo the Partition Agreement now is because drilling that began about 34 years after its execution revealed that its division of mineral interests is more advantageous to other parties than it is to many of the Appellants. There is no rule of construction that permits the unambiguous language in the Partition Agreement to be departed from because its application to facts that developed after its execution results in unequal benefits to some of its signatories' successors and other parties. Moreover, Texas law prohibits what Appellants seek here, which is an acceptance of the portions of the Partition Agreement they like—divided surface—and a rejection of the portions they dislike—divided minerals.

WHEREFORE Appellees pray that this Court affirm the judgment below and grant to them such further relief to which they may be entitled.

43

Respectfully submitted,

SCOTT, DOUGLASS, &
MCCONNICO, L.L.P.
303 Colorado Street, Suite 2400
Austin, Texas 78701-2589
(512) 495-6300
(512) 495-6399 Fax

By: */s/ Kennon L. Wooten*
Mark W. Hanna
State Bar No. 24051764
mhanna@scottdoug.com
Kennon L. Wooten
State Bar No. 24046624
kwooten@scottdoug.com

**ATTORNEYS FOR APPELLEE
SMITH PRODUCTION INC.**

JONES GILL LLP
6363 Woodway, Suite 1100
Houston, Texas 77057
(713) 652-4068
(713) 651-0716 Fax

By: */s/ Lee S. Gill*
Lee S. Gill
State Bar No. 07921360
gill@jonesgill.com

**ATTORNEY FOR APPELLEES THORP
PETROLEUM CORPORATION, EL
PASO PRODUCTION COMPANY; EL
PASO E&P COMPANY, LP; EL PASO
EXPLORATION & PRODUCTION
MANAGEMENT, INC.; STANCO LAND
MANAGEMENT, LLC, AND
MEREDITH LAND & MINERALS
COMPANY**

44

1176340

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served on all counsel of record on March 18, 2015, as indicated below:

*Via electronic service*
Roger S. Braugh, Jr.
SICO, WHITE, HOELSCHER, HARRIS & BRAUGH, LLP
900 Frost Bank Blaza
802 N. Carancahua
Corpus Christi, TX  78470
rbraugh@swbtrial.com

David George
CONNELLY BAKER WOTRING, LLP
700 JPMorgan Chase Tower
600 Travis Street
Houston, TX  77002
dgeorge@connellybaker.com

*and*

John T. Flood
Flood & Flood
802 N. Carancahua, Suite 900
Corpus Christi, Texas  78401
john@floodandflood.com
Attorneys for Appellants Anna Maria Salinas Saenz, et al.

*Via Facsimile:*  956-687-6125
Rolando Cantu
LAW FIRM OF ROLANDO CANTU, P.C.
4428 S. McColl
Edinburg, TX  78539
Attorney for Alicia Salinas

1176340

*Via electronic service*
Jose Luis Flores
ATTORNEY AT LAW
1111 W. Nolana
McAllen, TX 78504
joe@jlfloreslawfirm.com
Attorney for Eleodora Salinas Del Real, Dalia
Salinas and Jose Manuel Flores

*Via electronic service*
J. Joseph Vale
O.C. Hamilton, Jr.
ATLAS & HALL, L.L.P.
P.O. Drawer 3725
McAllen, TX 78502
jvale@atlashall.com
och@atlashall.com
Attorneys for Luisa M. Ruiz, Norberto Salinas, Fausto Salinas, Rosalinda Salinas Balderas, Linda Mandes, Ricardo L. Salinas, Veronica Casas Campbell, Elda Salinas Ponce, Cindy Casas Reyna, Thelma Salinas, Elodia Salinas, D-FOX, Ltd., and Cynthia M. Villarreal, f/k/a Cindy Casas Reyna

*Via electronic service*
Juan J. Hinojosa
LAW OFFICES OF JUAN J. HINOJOSA
612 W. Nolana Loop, Suite 410
McAllen, TX 78504
jjhinojosa@bizrgv.rr.com
Attorney for Arturo Salinas

*Via electronic service*
C. Frank Wood
Sanchez, Whittington, Zabarte & Wood, L.L.C.
3505 Boca Chica Blvd., Suite 100
Brownsville, TX 78521
fwood@swjz.com
Attorney for Ruben Garcia, et al.

46

*Via electronic service*
Daniel Robles
ATTORNEY AT LAW
Westoria Building, 1st Floor
420 S. "F" Street
Harlingen, Texas 78550
noemi@dan-robles.com
Attorney for Oscar Garcia, Jr.

*Via electronic service*
Ricardo L. Salinas
SALINAS/FLORES
2011 N. Conway
Mission, Texas 78572
rsalinaslaw@yahoo.com
Attorney for Ricardo Salinas

*Via electronic service*
Rene A. Flores
THE LAW OFFICE OF RENE A. FLORES
2724 W. Canton Road
Edinburg, Texas 78539
rene.flores@yahoo.com
Attorney for Alida Salinas Hernandez, Arnaldo Salinas, Alma Salinas
Munoz, Adelaida Salinas, Aida Salinas Flores, Guadalupe Salinas, Maria
Ester Salinas Cantu, and Maria del Carmen Zamora


*/s/ Kennon L. Wooten*
Kennon L. Wooten

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief was prepared using Microsoft Word 2010, and that, according to its word-count function, the sections of the foregoing brief covered by TRAP 9.4(i)(1) contain 11,670 words.

*/s/ Kennon L. Wooten*
Kennon L. Wooten

47

1176340

# APPENDIX A

**STATE OF TEXAS** §
§
**COUNTY OF HIDALGO** §

## AFFIDAVIT

BEFORE ME, the undersigned authority, on this day personally appeared FAUSTO SALINAS, who after being duly sworn by me, deposed and stated as follows:

1.     I was born on July 2, 1935. I am, therefore, over 21 years of age, I am competent to make this affidavit, I have never been convicted of a crime involving moral turpitude and I have personal knowledge of all facts stated herein and they are true and correct.

2.     References will be made in this affidavit to instruments of record in Starr County, Texas, as shown on the Abstract of Title filed by Thorp Petroleum Corporation ("Thorp's Abstract").

3.     My father, Octavio Salinas, was one of 12 children of Juan and Ynes Salinas. Juan N. Salinas and Ynes Salinas owned a tract of approximately 1,284 acres in Porciones 38, 39 and 40, ancient jurisdiction of Reynosa, Starr County, Texas, referred to herein as "the property." In 1964, my grandparents made a deed (item 12 in Thorp's Abstract) to my father, Octavio Salinas, of 150 acres in the northeast corner of the property. Later in 1964, my grandparents made a gift deed to each of their children of an undivided 1/12 interest in the remainder of the property ("1964 Gift Deed," item 14 in Thorp's Abstract). The net acreage conveyed was 1,134 acres.

4.     There were mineral interests in the property that my grandparents did not own. Thus, all of the minerals are not owned by Plaintiffs and Defendants.

5.     I was employed in the oil field business up until 1966 when I started farming some of the above referred to property together with my father. My grandfather was aware of the fact that his children would eventually divide up the 1,134 acres of land, and before he died in 1967. I remember hearing my grandfather express his desire that the ranch house be set aside for Esther Salinas and Ascencio Salinas, two of his children, neither of whom were married, and who lived there.

6.     After my grandfather died and before December of 1968, I was present on several occasions when my aunts and uncles met to discuss how they were going to divide the 1,134 acres. Some of them had expressed desires as to where they wanted their portion of the 1,134 acres to be located, and essentially, all of my aunts and uncles had no disagreement where each was to receive his or her part of the 1,134 acres. During those discussions between my aunts and my uncles, I remember that they discussed the fact they had always agreed that if Esther died before Ascencio, that her interest would go to him. My aunt Ester died without a will, unmarried and without ever having had any children. My grandmother, my father and all surviving aunts and uncles joined in a deed (item 26 in Thorp's Abstract) to my uncle Ascencio Salinas conveying the interest they inherited from Ester.

7.     In September of 1968, I went with my father to Raymondville, Texas where we met

2770

with Juana Salinas, his sister. My father, Octavio Salinas, had previously made an agreement with her to buy her 94.5 acres, which was her part of the 1,134 acres. However, she did not want to sell her minerals. She preferred to retain her mineral interest under the 1,134 acres. While in Raymondville, Juana Salinas and her husband, signed a deed to my father and I was a witness to her husband's mark on the deed.

8.      I also remember that my uncles, Horacio and Adan Salinas, had each purchased 25 acres from the Margo's, which was located adjacent to the lands which Hermila was to receive in the partition. All of my aunts and uncles, including Hermila, agreed that Adan and Horacio would get an additional 25 acres adjacent to their pro rata part of the 1,134 acres and in exchange, Hermila would get the 50 acre Margo tract as part of her 94.5 acres. They agreed that Adan would get his acreage in the northwest corner where he built his house. Adan had already been deeded 92.6 acres in the northwest corner when the partition survey was done. The survey of Adan's 94.5 acres, therefore, included the 92.6 acres which he had already acquired, and that with the 25 acres he had purchased from the Margo's, made his total surveyed acres 119.5 acres. They agreed that Horacio would get his acreage in the southeast corner and it was understood that Horacio was buying Leoncio's interest so that Horacio would be receiving 214 acres, being made up of the 94.5 acres he was entitled to, the 94.5 acres he was buying from Leoncio, and the 25 acres of the Margo property. They also agreed that Octavio would get his property adjacent to the 150 acres he already owned, and it was also understood that he had purchased Juana's interest in the surface. Therefore, he would be getting his 94.5 acres, Juana's 94.5 acres, and the 150 acres which he already owned. He would, therefore, be entitled to 339 acres. Those instructions were given to the surveyor so that those parcels could be surveyed.

9.      After all of my aunts and uncles agreed on where each would receive his or her property, I heard my uncle Horacio say that he was going to employ the county surveyor, Elias Aguilar, to survey each tract that each of my aunts and uncles was to receive. I remember being at the ranch when Elias Aguilar and his crew were there surveying.

10.     After the surveys were completed, probably in December 1968, my father and I, and uncle Horacio, and one or two other uncles went to the office of John Pope III and they employed John Pope III to prepare a partition agreement. Everyone who signed it knew that Juana and Leoncio were not signing the instrument, and all of them knew the minerals, except for Juana's, were being divided. I had heard this discussed in the family meetings and get-togethers I attended. At those meetings, some of the siblings wanted to keep the minerals undivided, others wanted to divide them along with the surface rights. In the end, those who wanted to divide up the Salinas mineral rights prevailed, and they signed the partition agreement, dated December 27, 1968 (item 27 in Thorp's Abstract), in which they all agreed to divide the minerals so that the minerals were with the surface which each received.

11.     In November of 1968, I, together with Beto Salinas and a couple of other friends, had a conversation with Leonicio Salinas. I knew that my father and I were interested in acquiring as much of the 1,134 acres that we could, so I asked Leonicio if he would be willing to sell us the acreage which he would be getting in the partition. He told me at that

2

time, that he had already sold everything he would be getting in the partition to my uncle Horacio and that he had nothing else left to sell. I subsequently learned that in October of 1968, Leonicio had signed a deed to Horacio Salinas. Leoncio has never made a claim to any of the surface or minerals under the 1,134 acres that I am aware of.

12.     After the agreement of partition was signed, the parties immediately began and continued exclusive possession. Many began to construct improvements, fences, wells, and buildings on their respective parcels. My uncle Horacio immediately sold his 214-acre Parcel 1 to Eusebio Solis, reserving all his mineral rights (item 29 in Thorp's Abstract).

13.     My uncle Flavio Salinas immediately went into possession of his Parcel 5, constructing fences and other improvements thereon. His possession and that of his children (Elodia, since his death has been continuous, actual, visible and hostile to any other claim to Parcel 5, using and enjoying said parcel exclusively. Before suit was filed by Anna Saenz in 2004, no one had ever asserted any claim to Parcel 5 except Flavio Salinas and his heirs and successors.

14.     My father immediately went into exclusive possession of his Parcel 8, constructing fences and other improvements. Since 1968, continuing until the present time, my father, myself and my sisters have continued to be and remain in continuous, actual, and visible possession of Parcel 8, cultivating, using and enjoying said parcel exclusively. Our possession was hostile to and did not recognize any claim to said land as being superior to our own. Before suit was filed by Anna Saenz in 2004, no one had ever asserted any claim to Parcel 8 except Octavio Salinas and his heirs and successors.

15.     My sisters, Rosalinda Balderas and Elda Salinas Ponce, and my nieces, Cindy Reyna, Veronica Campbell, and Linda Mandes, and I are now the sole owners and in exclusive possession of all of the surface of Parcel 8 and all but Juana Salinas Garcia's share of the Salinas mineral interest therein, and of all of the surface of the 150 acres and all of the Salinas mineral interest therein.

16.     My uncle Adan had already built his house on his tract because a long time before the partition deed, he knew what tract he was going to eventually get. From the time of the partition, my aunts and uncles or their heirs or grantees have been in possession of those tracts. Until the filing of this suit, 36 years after the partition, none of the 12 siblings or their heirs ever contested the possession or ownership of surface or minerals of those who signed the partition agreement.

_____
**FAUSTO SALINAS**

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority, by the said FAUSTO SALINAS, on this _25th_ day of _February_ , 2010, to certify which witness my hand and official seal of office.

_____
NOTARY PUBLIC, STATE OF TEXAS

ANDREW LIESMAN
Notary Public, State of Texas
My Commission Expires
06-23-2010

3

2772

# APPENDIX B

FILE NO. 72442

WARRANTY DEED

TEXAS STANDARD FORM

126—WARRANTY DEED

LEONCIO SALINAS        TO      HORACIO B. SALINAS

## The State of Texas, }  Know All Men by These Presents:

## County of STARR

That I, LEONCIO SALINAS, a single man,

of the County of Hidalgo      State of Texas      for and in consideration

of the sum of TEN AND NO/100 ($10.00)

and other good and valuable considerations,         **DOLLARS**

to me in hand paid by HORACIO B. SALINAS, receipt of all of which is hereby acknowledged,      as follows:

have Granted, Sold and Conveyed, and by these presents do Grant, Sell and Convey unto the said

     HORACIO B. SALINAS

of the County of Hidalgo      State of Texas      all that certain lot, tract, piece, or parcel of land situated in Starr County, Texas, more particularly described as follows:

All that certain tract set aside, or to be set aside, to Grantor, under Agreement heretofore entered into by and between Grantor and Grantee, and their brothers and sisters; and more particularly described as follows:

The State of Texas,

County of Starr.      Parcel No. 1, containing 214.164 acres of land, out of Tracts Nos. 84 and 85, of Porciones Nos. 38-39, Reynosa Jurisdiction, Mexico, now Starr County, Texas. To: Horacio Salinas.

Beginning at an Iron Rod, in center line of County Road on the East boundary line of Tract No. 85, same being the S. E. corner of said Tract No. 85, the N. E. corner of Tract No. 89, of said Porciones Nos. 38-39, for S. E. corner hereof;

Thence following fence and South Line of said Tract No. 85, N. 80° 27' W., 4105.4 feet to an Iron Pipe, under fence, the S. E. corner of Parcel No. 2, of this Partition, for S. W. corner hereof;

Thence with the dividing line between Parcels Nos. 1 and 2, of this Partition, N. 09° 33' E., 2271.5 feet to an Iron Pipe, the S. W. corner of Parcel No. 3, of this Partition, for N. W. corner hereof;

Thence with the dividing line between Parcels Nos. 1 and 3, of this Partition, S. 80° 27' E., 4105.4 feet to a nail in center line of County Road and East line of Tract No. 85, the S. E. corner of Parcel No. 3, of this Partition, for N. E. corner hereof;

Thence with East line of said Tract No. 85, S. 09° 33' W., 2271.5 feet to the place of beginning and containing within these metes and bounds, 214.164 acres of land

EXHIBIT
4

337/321

402326

322

TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said   HORACIO B. SALINAS, his heirs and assigns forever and   I    do hereby bind. myself, my heirs, executors and administrators, to Warrant and Forever Defend, all and singular the said premises unto the said   HORACIO B. SALINAS, his heirs and assigns, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof.

WITNESS my   hand   at   Edinburg, Texas, this   9th   day of   October   19 68.

Witnesses at Request of Grantor:

_Leoncio Salinas_
(Leoncio Salinas)

SINGLE ACKNOWLEDGMENT

THE STATE OF TEXAS,
COUNTY OF   HIDALGO

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared   LEONCIO SALINAS, a single man, known to me to be the person   whose name   is   subscribed to the foregoing instrument, and acknowledged to me that   he   executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the   9th   day of   October   A. D. 19 68

(L. S.)

(Cecil A. Edwards)
_Cecil A. Edwards_

Notary Public in and for   Hidalgo   County, Texas

FILED FOR RECORD THE  10th DAY OF JANUARY, A.D. 1969 AT  3:11 O'CLOCK  P M.,
DULY RECORDED   THE  15th DAY OF JANUARY, A.D. 1969 AT  8:10 O'CLOCK  A M.

INSTRUMENT NO. 73440

JOSE S. HINOJOSA, COUNTY CLERK, STARR COUNTY, TEXAS.

BY: _____ DEPUTY

2327

# APPENDIX C



EXHIBIT NO. A

Bryant & Stingley, Inc.

SALINAS AREA
STARR COUNTY, TEXAS

ATTACHMENT 1
TO
TITLE OPINION
PORCIONES 38 & 39
1334.985 ACRES

2807